UNITED STATES of America, Plaintiff-Appellee,

v.

Gloria GREEN, Defendant-Appellant.

No. 13861.

United States Court of Appeals Seventh Circuit.

March 28, 1963.

Julius Lucius Echeles, Sheldon J. Sandman, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

It is stated for defendant, Gloria Green, in her brief, "The only issue here is whether or not the government agents illegally entrapped the defendant into committing the crime."

Defendant was convicted after a trial to the court without a jury on a two-

count indictment, charging her with selling narcotics in violation of 26 U.S.C. § 4705(a) in that on May 24, 1961, she sold to William Jackson two grams of heroin for $110.00 and that on June 2, 1961, she sold to Jackson eight grams of heroin for $250.00.

There is no need we think to undertake a recital of the facts in detail; it would serve no purpose other than to unduly lengthen the opinion. It is sufficient to state the essential facts relative to the question of entrapment.

Jackson, a federal narcotics agent, was in the company of a government informer, one Bedford, when the latter called Green and arranged a meeting. At the meeting the sale of the heroin described in Count I was made. Green accepted $110.00 from Bedford who had in turn received it from Jackson. Later delivery of the heroin was planned. The next morning delivery was made in an alleyway where defendant pointed to a small manila package lying on the ground. The package contained the heroin. On June 1, 1961, substantially the same thing happened when a sale was arranged for and made of the heroin described in Count II.

Bedford was not a witness at the trial. Jackson testified he never saw defendant before the first sale and that he had made no investigation of her himself.

Defendant testified that Bedford was her cousin by marriage and that she had known him for three years; that she had never sold him narcotics before May 24, 1961, and before that she had never handled narcotics; that Bedford had called her seven or eight times before May 24 and importuned her to get some narcotics for his sick wife. At first she refused, but on May 24, she met him and Jackson and afterwards called a man known as Big Red, who said he would have nothing to do with Bedford, but would arrange to provide the narcotics through her; that the transaction was completed and later she told Bedford where Big Red would put the narcotics in the alley; that between May 24 and June 1, 1961, Bedford again called her a number of times and finally she was importuned to undertake a similar arrangement with Big Red and make a sale of narcotics on June 1.

There was additional evidence submitted by the government to the effect that the first meeting between Jackson, Bedford, and Green on May 24, 1961, occurred at a street intersection; that Bedford introduced Jackson to Gloria Green and told her "This is Benny, the fellow I told you about." Jackson then ordered a spoon of heroin. Green stated that it would cost $110.00. Jackson offered her the money. She said, "Give it to Sonny." Jackson handed the $110.00 to Bedford, who handed it to Green. Green then said, "Go over to Sonny's house, I will call you in about an hour." Jackson later met defendant in an alley where the first narcotics were delivered. When he informed her he would like to see her again, she replied, "Get in touch with Sonny, he knows how to get in touch with me."

At the next meeting, June 1, 1961, defendant quizzed Jackson about the quality of the last delivery and also mentioned that as of then she hadn't had a "bust" (arrest) and didn't want one. At her direction Jackson placed the money for the next delivery in a shopping bag she was carrying. Green then called a taxicab and said to Jackson, "Go over to Sonny's house. I will call you when I am ready."

There were a number of contradictions in the record. Probably the most glaring was defendant's story that Bedford had called her a number of times asking her to get narcotics for his wife, yet when she first met agent Jackson, Bedford introduced him as, "This is Benny; the *fellow* I told you about." (Emphasis supplied.)

We have examined the record and are convinced that the evidence was sufficient for the trial judge to hold that there was no entrapment. It supports the essential holding relating to defendant's willingness and predisposition to

commit the offense. Of course, the sole judge of credibility was the judge himself and we think the evidence permitted him to draw the conclusion that the story of entrapment was a fabrication.

The judgment is affirmed.