**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles ARMSTRONG, Defendant-Appellant.**

**No. 14555.**

United States Court of Appeals Seventh Circuit.

Dec. 7, 1964.

Frank Oliver, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before SCHNACKENBERG, KILEY and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Defendant Armstrong was tried to a jury on a seven-count indictment charging violations of Secs. 4704(a) and 4705 (a) of Title 26, and Sec. 174 of Title 21, U.S.C.A. The counts were predicated upon three sales of heroin to William Turnbeau, a Federal narcotics agent, on July 10 and 19, and August 14, 1962. The jury found defendant guilty on all counts. From the judgment entered on such verdict defendant appeals.

Defendant invoked the defense of entrapment and admitted the three sales, as well as other elements of the offenses laid in the indictment.

The grounds urged for reversal are (1) that the Court erred in its refusal

to allow defendant's motion for a judgment of acquittal, appropriately made, on the basis that entrapment was shown as a matter of law, and (2) that in any event the Court erred in refusing certain instructions offered by defendant, subsequently discussed.

In considering whether the Court erred in its refusal to allow defendant's motion for a judgment of acquittal, we must view the evidence in the light most favorable to the government. Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859; United States v. Jones, 302 F.2d 46 (C.A. 7); United States v. Green, 315 F.2d 289 (C.A. 7), and United States v. Ellicott, 336 F.2d 868 (C.A. 4). The government offered the testimony of William Turnbeau, Vernon D. Meyer and Gale E. Ruhl, all Federal narcotics agents. The only testimony offered for the defense was that of defendant. In view of the admissions inherent in the defense of entrapment, we think it sufficient to set forth the testimony in condensed form.

Turnbeau testified that on July 10, 1962, he was introduced to defendant by Gino Lane, a special employee of the Bureau of Narcotics, who said to defendant, "This is Bill, a friend of mine who I have known for several years and I met him this morning and he told me he wanted to buy two spoons of heroin." After defendant shook hands with Turnbeau, Lane said, "Since you are the only one around here who can take care of that kind of action, I thought I would give you a chance to make the bread." The defendant said, "Look, Bill, you and I are strangers and the only people that I am concerned about are the ones that are trying to do me harm. I can let you have two spoons of heroin for $275.-00." Turnbeau told defendant that he thought the price was fair. Defendant asked for money in advance and told Turnbeau that it would only take a short while to get the heroin. Turnbeau said that he didn't want to give that much money to a complete stranger and wanted to go with him. The defendant said that this was impossible but that he was

reliable, inasmuch as he took care of narcotics business like any other legitimate businessman; that he was a large "pot" (marihuana)' dealer, but that he had got into heroin in recent months. Turnbeau then gave defendant $275.00 in Official Advance Funds. Defendant left Turnbeau and entered a taxicab at 55th and South Parkway. About 35 minutes later, he returned to the same place, met Turnbeau, and handed him two pieces of newspaper, each containing an aluminum foil packet of heroin. Turnbeau, Lane and defendant entered Turnbeau's automobile and drove to 51st and Cottage Grove. During the ride, Turnbeau asked defendant if he could have his telephone number. Defendant told him that he couldn't give his telephone number and that he would have to get in touch with Lane any time he wanted to make a buy.

On July 19, 1962, Turnbeau again met defendant and told him he wanted to make another purchase of heroin but was not satisfied with the weight of the previous purchase. Defendant told him that the previous heroin had been diluted with Mannite but that the heroin he now had was diluted with milk sugar and had been put up just three days previously, on July 16, 1962. After some discussion, the price and amount of heroin were agreed upon, defendant went to his home, and in about an hour and 15 minutes returned and delivered the heroin to Turnbeau. Defendant, at Turnbeau's request, gave him his telephone number and told him the proper time to call.

On August 13, 1962, Turnbeau called defendant and said, "I want to see you about getting something." Arrangements were made for a meeting, when defendant told Turnbeau that he would not be able to deliver the heroin at that time because he could not get in touch with his connection, but promised to do so the following day. On August 14, the two again met according to arrangements previously made, and defendant sold Turnbeau heroin. During this meeting defendant told Turnbeau that his

connection was a Jewish man whose business was picking horses.

Turnbeau on cross-examination admitted that following the third transaction he tried to purchase heroin from defendant on six different occasions, over a period of six weeks, and that on each occasion defendant refused. It was two weeks after his last attempt that Turnbeau arrested defendant.

Agents Meyer and Ruhl in the main corroborated Turnbeau as to his meetings with defendant, but not as to the conversations which took place between Turnbeau and defendant. Agent Meyer testified that he recruited Lane as a special employee. Lane told him he wanted to work for the government to avoid jail and, in return for his cooperation, he was able to avoid a narcotics prosecution in the state court.

Defendant testified at length, which testimony need not be related in detail for the reason that the government concedes that his testimony, if believed, shows entrapment. He testified that after his discharge from Leavenworth in September, 1960, he worked as a janitor in Chicago, which job he continued to hold until the date of trial. He met Lane in Leavenworth, where they were cellmates and friends. Lane attended him as a nurse during a long illness. After their release from prison, defendant met Lane in March, 1961, became very friendly with him and his wife and went to their home two or three times a week for dinner. When Lane's wife lost her job, he helped them financially. On July 8, 1962, defendant refused Lane's request to obtain drugs for him. The next day Lane again asked defendant to get narcotics for him, and at this time Lane's wife joined in the request, reminding him that Lane had saved his life in Leavenworth. Defendant continued his refusals, telling Lane he had already been in prison for doing that kind of favor, but on July 10, he finally agreed to accommodate Lane. It was then that Lane made arrangements for defendant to meet Turnbeau, and the first sale was consummated. On July 17, Lane again beseeched defendant to obtain drugs, but defendant said he did not want to get involved. Lane begged him to do it one more time, reminding defendant that he had taken care of him in his illness, and the second transaction resulted. Under similar circumstances, the third transaction took place, on August 14.

Defendant testified that following the third transaction, "Bill" (the name by which Turnbeau was known to him) called him six times for more drugs, and each time he refused. Defendant complained to Lane, asking him to tell Bill not to call, and told Lane he was not going to get more drugs. Lane asked him to do it once more. Defendant told him that one time had led to a second, then a third, and the third would lead to a fourth; that he did not want to be involved; that he had a job and was too old to go to jail again. He testified that he did not sell any drugs after his discharge from the penitentiary in September, 1960, until his first sale to Turnbeau. He denied the numerous incriminating matters testified to by Turnbeau.

Counsel in support of the defense of entrapment emphasizes (1) that the testimony of witnesses for the government was contradictory as to what was done and said by the parties in connection with the sales of narcotics by defendant; (2) that Lane, the informer used by the government, was not called by it as a witness to contradict defendant's testimony as to the circumstances under which he was induced to make the sales, and (3) that agent Turnbeau admitted that following the last sale he attempted on numerous occasions to make further purchases but the defendant refused. Notwithstanding this rather appealing argument, it was for the jury to determine whether it would believe the testimony of defendant or that of agent Turnbeau. It was a matter of credibility, and the jury evidently chose to believe the agent. The jury's resolution of such factual disputes is binding

on this Court. United States v. Jones, 302 F.2d 46, 47 (C.A. 7); United States v. Green, 315 F.2d 289, 290 (C.A. 7).

Certainly there is no merit in defendant's contention that entrapment was shown as a matter of law. His reliance upon Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, is misplaced. In that case the only testimony on behalf of the government was that of its informer. The Court held from the undisputed testimony of such witness that entrapment was established as a matter of law. The instant case is more akin to Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827. In that case, as here, the government relied upon the testimony of a narcotic agent as to sales made to him by the defendant. Also as in the instant case, defendant testified that he was induced to make the sales by a government informer who was not called by the government to dispute defendant's testimony. The Court held that defendant's testimony, even though undisputed by the government informer, was not sufficient to show entrapment as a matter of law but only served to present an issue for the jury.

In considering the contention that the Court erred in refusing certain instructions offered by defendant relative to his defense of entrapment, we think it pertinent to set forth the instruction which the Court gave on that issue, as follows:

"The defendant has interposed the defense of entrapment. To constitute a defense the entrapment must be unlawful. Unlawful entrapment means that the idea of committing the crime originated with the law enforcement officers or their agents rather than with the defendant, that he had no previous disposition to violate the law, in this case and that they urged and induced him to commit the crime charged.

"This defense is based on the policy of the law not to ensnare or entrap innocent persons into the commission of a crime.

"The defense of unlawful entrapment is not established if the defendant was either engaged in similar crimes, or was ready and willing to violate the law, and the law enforcement officers merely afforded him the opportunity of committing the crime. Under these circumstances entrapment is lawful, even though the law officers may have used a ruse or otherwise concealed their identity."

In connection with this instruction the Court also charged the jury, "that for the purpose of this case, it must consider Gino Lane to have been a Government agent while he was cooperating with the Government."

The entrapment instruction as given by the Court was taken from the Manual of Instructions in Federal Criminal Cases, 33 F.R.D. page 557 (Sec. 5.02), following which cases which support it are cited and analyzed. The instruction enumerates the factors essential to constitute unlawful entrapment. In fact, defendant does not contend that the instruction is erroneous but criticizes it on the basis that it does not properly state defendant's theory of the case.

■■ The criticism is a prelude to defendant's contention that the Court committed prejudicial error in its refusal to give the following instruction:

"The Court instructs the jury it is the defendant's theory of the case that he was induced by Gino Lane, a Special Employee of the Federal Bureau of Investigation, to engage in the transactions charged in the indictment, and but for the inducements of Lane to engage in such transactions he would not have done so. It is his contention that he was not ready and willing to engage in such transactions whenever the opportunity offered, but only engaged in them because of Lane's efforts to cause him to do so. If the government has failed to satisfy you, beyond a reasonable doubt, that the transactions were not the result of Lane's inducements, and has failed to establish beyond a reasonable doubt that the defendant was ready

and willing to enter into such transactions whenever the opportunity offered, then you must find the defendant not guilty."

The Court having properly instructed the jury on the defense of entrapment, we think it did not err in refusing to give this instruction. It is not discernible how there could be a defense theory separate and distinct from a government theory as to the elements involved. True, defendant's offered instruction properly placed the burden of proof upon the government, which the given instruction failed to do. However, the Court's charge to the jury must be considered in its entirety, and the Court as to the offenses alleged in the various counts enumerated for the jury the elements which the government must prove beyond a reasonable doubt, including that "the defendant was not entrapped into the commission of the crime stated."

■ Defendant further contends that the Court erred in its refusal to give the following instruction:

"You are instructed that the fact that the defendant previously was punished for offenses involving narcotics may only be considered by you as that situation may reflect upon the defendant's honesty as a witness. You may not consider those matters as rendering more probable the defendant's commission of the offense of which he stands charged. You are further instructed that such prior matters do not give the government the right to entrap him into the commission of further offenses."

Defendant's reliance upon Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, and Hansford v. United States, 112 U.S. App.D.C. 359, 303 F.2d 219, is misplaced. Neither case holds that a prior narcotic conviction can be shown only for the purpose of impeachment. In Sherman it was held that a prior criminal record, standing alone, is not sufficient to defeat the defense of entrapment, while in Hansford it was stated (page 222), "A criminal record is relevant in regard to

a predisposition or propensity, but does not preclude the defense of entrapment."

It is our judgment that defendant has shown no prejudicial error. The judgment is

Affirmed.