(No. 42124.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HOBART K. SMITH, Appellant.

*Opinion filed December 19, 1969.*

IRA J. MELAAS, JR., of Rock Island, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JAMES N. DEWULF, State's Attorney, of Rock Island, (ROBERT C. SHEARER, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The appellant, Hobart K. Smith, on November 20, 1963, was found guilty of murder of his wife's paramour following a jury trial and sentenced to the penitentiary for a term of not less than 20 nor more than 36 years. Acting *pro se,* he filed a petition on February 23, 1968, for a writ of error *coram nobis,* in the circuit court of Rock Island County. He later filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1967, ch. 38, par. 122—1 *et seq.*) and one for a writ of *habeas corpus.* The three petitions alleged that the appellant had been denied his constitutional right to a fair trial because a *bona fide* doubt of his sanity existed at the time of his trial and a jury had not been empaneled to ascertain his competence. The State filed a motion on March 12, 1968, to dismiss the petitions on the ground that no *bona fide* doubt of competence existed at the time of his trial and to incorporate in the record portions of the trial record it considered relevant. The same day the circuit court appointed counsel to represent the appellant on the petitions. On April 19, 1968, the court denied the State's motion. The State requested a rehearing on its motion and was granted leave to supplement the record with a psychiatric report of the appellant which had been filed with the trial court at the appellant's trial. The court upon reconsideration allowed the State's motion and dismissed the appellant's petitions without a hearing. The appellant, represented by counsel, has appealed directly to this court.

The circuit court erred in dismissing his petitions, the

appellant declares, because the record as a whole indicates that there was a *bona fide* doubt of his competence at the time of his trial; because his conviction is based on evidence obtained through an illegal search, and because his conviction was based on self-incriminating evidence. We are asked to reverse the judgment of the circuit court relating to the appellant's petitions and to reverse the original conviction of murder and order a new trial. Alternatively, the appellant argues that the judgment dismissing his petitions for post-conviction relief should be reversed and a hearing ordered on the issues raised in the petitions and upon this appeal.

One contention is that the circuit court's dismissal of his petitions improperly denied the appellant the opportunity to present evidence bearing on his competence to stand trial on November 20, 1963. It is argued that there was at the time of his trial sufficient evidence to create a *bona fide* doubt of his sanity, which was either not known or which was only partially known to the trial court. The appellant asserts that if the trial court had been completely aware of the pertinent circumstances it would have been required to conduct a competency hearing to ascertain his capacity to stand trial. This error, he concludes, cannot be remedied by attempting now to determine his capacity as of the time of trial and that therefore he is entitled to a new trial.

If facts and circumstances did exist which raised a doubt of the appellant's sanity at the time of his trial the court would have been required to hold a sanity hearing to determine his competency to stand trial. (*People* v. *Bortnyak*, 39 Ill.2d 545, 547; *People* v. *Burson*, 11 Ill.2d 360, 370.) This obligation of the trial court to hold a hearing under such circumstances is not necessarily avoided because a defendant has failed to raise the issue. (See *People* v. *McLain*, 37 Ill.2d 173, 177; *People* v. *Burson*, 11 Ill.2d 360, 370.) We have held that, if there were facts which, if known by the trial court, would have raised a *bona fide* doubt of the accused's sanity he would have had a right to

a hearing on the question of his competence to stand trial. *People* v. *Bortnyak,* 39 Ill.2d 545, 547; *People* v. *McLain,* 37 Ill.2d 173, 178; *McDowell* v. *People,* 33 Ill.2d 121; *People* v. *Anderson,* 31 Ill.2d 262, and *People* v. *De Simone,* 28 Ill.2d 72.

However, the appellant's petitions failed to demonstrate that such a hearing should have been had. A petition for post-conviction relief must make a substantial showing that a petitioner's constitutional rights have been violated and bare allegations or conclusions to that effect are not sufficient to require a hearing. (*People* v. *Reeves,* 412 Ill. 555, 560.) Here the appellant did not state in his petition from what source any of the evidence that he claims he wished to introduce at the post-conviction hearing would come, that it was available, or what it would consist of, as this court has held is required by the statute. (Ill. Rev. Stat. 1967, ch. 38, par. 122—2; *People* v. *Ashley,* 34 Ill.2d 402, 411.) "The function of the pleadings in a proceeding under the act is to determine whether the petitioner is entitled to a hearing." (*People* v. *Airmers,* 34 Ill.2d 222, 226.) It is also asserted by the appellant that, apart from this evidence which he did not describe, certain circumstances existed which, standing alone, clearly indicated that he was entitled to a hearing as to his competency. These include the facts that on June 13, 1963, the appellant was charged with the kidnapping of his niece in Aledo, Illinois, and that about July 9, 1963, he voluntarily committed himself to the East Moline State Hospital, apparently, for psychiatric evaluation in relation to the kidnapping of his niece; that after his release from the State Hospital he was incarcerated in Aledo until September 16, 1969, the day before the murder, and also that a note written by the appellant on September 17, 1963, the morning of the shooting, shows he was incompetent. The note stated: "To police of East Moline, Ill. What I am about to do I know there is no forgiveness. I wrote Betty a letter Sept. 1 asking her to come back

to me. I love her so much. She is the only thing I have to live for. She made fun of the letter to other people. Betty, my wife for 18 years, I love so much. When you read this, if I don't get Bill, the feller she is living with under his name, I hope this makes him think before he takes up with someone else's wife. Hobart Smith, 17 Sept." It is argued that these circumstances, together with the request by his trial counsel for the appellant's psychiatric examination, viewed in their totality, establish that a *bona fide* doubt of the appellant's competence existed at the time of trial.

However, considering the petitions of the appellant in conjunction with the transcript of the trial and the other proceedings (see *People* v. *Slicker,* 42 Ill.2d 307) we cannot say the trial court erred in holding that no competency hearing was required at the time of trial. The trial court was aware of all the cited circumstances which appellant claims raised a *bona fide* doubt of his sanity. At the request of the appellant's counsel he was given a psychiatric examination prior to trial. The examination report which was received by the court found that there were "no symptoms or signs of an active psychotic process" and the psychiatrist stated: "In my opinion he is able to and can cooperate with his counsel and is aware of the nature of his act and the consequences thereof." The court also had the opportunity of observing the appellant and his conduct during his testimony and at the trial generally. Under these circumstances we cannot say that there was then or there is now such a doubt of the appellant's sanity as would require a competency hearing. See *People* v. *Bortnyak,* 39 Ill.2d 545; *People* v. *Pridgen,* 37 Ill.2d 295; *People* v. *DeMary,* 37 Ill.2d 364; *People* v. *Lego,* 32 Ill.2d 76; *People* v. *Harper,* 31 Ill.2d 51; *People* v. *Cleggett,* 22 Ill.2d 471.

The appellant also argues that the admission into evidence of the above mentioned note, which he had written on the day of the shooting, was erroneous. The note was discovered at the police station when officers examined and

inventoried the personal effects of the appellant following the gunfight between him and the victim. The appellant's wallet had been taken at the scene of the shooting by an investigating officer who had found appellant seriously wounded and in a semi-conscious condition. The removal of the wallet from his person by the officer and the subsequent examination of the wallet at the police station, the appellant claims, infringed his rights under the fourth and fifth amendments to the United States constitution.

However, the question must be considered as having been waived, for the appellant did not present the point to the trial court and it may not be first raised on appeal. Ill. Rev. Stat. 1967, ch. 38, par. 122—3; and see *People* v. *Clements,* 38 Ill.2d 213, 216, and *People* v. *Reed,* 36 Ill.2d 358, 361.

Comment, however, is not inappropriate in view of the novelty of the question. We believe that the conduct of the investigating officer who secured the wallet and the gun of the appellant at the scene of the shooting was reasonable and an appropriate police measure. The appellant was found at the scene of the shooting semi-conscious and bleeding from three gunshot wounds. Everyone is aware that a wallet typically contains cards or other materials identifying its owner. One of the reasons for this is to permit the owner's identification in the event of illness or accident. It is common for the identifying material to contain also the identification of the person to be notified in case of emergency. The taking of the wallet to identify the semi-conscious man was not unreasonable conduct for the officer. That it was apparently not necessary to use the wallet to identify the appellant does not disturb the reasonableness of its being taken.

Though the identification of the appellant was not apparently a problem, the securing of his wallet to safeguard it was not unreasonable under the circumstances. Nor would it be unreasonable to consider that the wallet might provide

information of value in the handling of the wounded man, *e.g.*, information concerning his blood type, being a diabetic, being unable to tolerate certain medications or anaesthetics, religious affiliation. It is clear that the appellant was not under arrest at the time, so no question of the limits of a search incident to arrest appears. The wallet's taking was, as the appellant's brief puts it, "before the investigation was started." Police officers in carrying out their responsibilities must often form judgments quickly and under stress. The conduct of this officer was not unreasonable. Had he failed to secure the wallet, a criticism of his professional conduct could not be lightly dismissed. Considering the pressing circumstances which confronted the officer, including the necessity of having the appellant brought to a hospital as soon as possible, it is understandable that he did not examine and inventory the wallet at the scene. This was done at the station house in the presence of a policeman identified as "the inventory officer." The inventorying of property coming into police possession is a reasonable procedure in the orderly safeguarding of property. It serves, too, to protect officers from unfounded charges of neglect or misappropriation of property. The discovery of the note, addressed to the police of East Moline, the city where the crime took place, did not convert the inventory process into an illegal search. The retention of the note which had been written by the appellant without police knowledge and which had been addressed to them in no way violated the appellant's privilege under the fifth amendment. The constitutional rights of the appellant were not infringed and the trial court properly denied his motion to suppress. *Cf. Terry* v. *Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; and *In re Boykin,* 39 Ill.2d 617.

We find no error in the dismissal of the appellant's petitions without an evidentiary hearing and affirm the judgment of the Rock Island circuit court.

*Judgment affirmed.*