STATE OF NEBRASKA, APPELLEE, v. EDWARD D. WALLEN, APPELLANT.

173 N. W. 2d 372

Filed January 6, 1970.    No. 37352.

Kerrigan, Line & Martin, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

Defendant was charged with the offense of keeping gaming devices for the purpose of playing a game of chance for money. A jury was waived and defendant was found guilty by the court and sentenced to pay a fine of $400 and costs. Defendant has appealed.

The evidence shows that on August 14, 1968, guards at the Scribner Air Base reported to the Nebraska State Patrol that an intoxicated motorist with a stalled automobile was found outside the entrance to the air base. A state patrolman arrived at the scene at 11:10 p.m., and the stalled automobile was found in a highway intersection with the intoxicated defendant standing near the car. The car could not be moved by its own power. Defendant was arrested and lodged in jail. The patrolman called the Fremont Gas Market and directed it to remove the automobile to its lot in Fremont. There was clothing hanging in the back of the car and suitcases also on the floor in the rear section, all of which were plainly visible.

The automobile was towed to the fenced lot of the Fremont Gas Market. After placing the defendant in jail, the patrolman went to the Gas Market and proceeded to inventory the contents of the automobile for the purpose of protecting the defendant against loss of the personal property in the automobile and to protect himself against false claims of loss upon their return to the defendant. It was during the course of making the inventory that the trunk of the car was opened with the key found in the switch. Upon opening the trunk and the checking of the contents of a vanity box five pairs of dice were found as well as other recognized gambling paraphernalia. Other dice were found in the glove compartment, some of which were observable through the plastic bag in which they were contained. About the time the inventory was completed, another patrolman appeared on the scene with a search warrant. It is on this evidence that defendant contends that the search and seizure of the gambling devices and paraphernalia was unlawful and that they should have been rejected as evidence against the defendant.

In this case, the defendant was arrested for intoxication. He was standing beside his stalled automobile in a highway intersection. On the defendant being lodged in jail, the duty devolved upon the patrolman to clear the highway by removing the automobile. This he did. The fact that the removal of the automobile was not done pursuant to some state law is not a material factor. His duty to cause the automobile to be removed because of the inability of the defendant to do so is in itself reason enough to support the action taken. Also, in removing the automobile necessary steps are required to be taken to protect the contents of the car for the benefit of the defendant. Taking an inventory of the contents of the automobile to insure the return of all the personal property to the defendant and to protect the patrol against false claim of loss while in the custody of law enforcement officers is a salutary practice whether

required by rule or common practice. There is no evidence in this record that the taking of the inventory was a subterfuge for an unlawful search for evidence to convict for crime. The evidence shows that the inventory was taken for the reasons heretofore stated and not to obtain evidence to convict the defendant of any crime. In fact, the evidence shows that defendant was not suspected of any offense, other than intoxication, until the dice and other gaming paraphernalia were discovered during the course of making the inventory. Such a situation does not support any claim of unlawful search or seizure. The taking of the inventory, even if it could properly be defined as a search, is not an unreasonable search and seizure within the constitutional prohibition against "unreasonable searches and seizures."

In Heffley v. State, 83 Nev. 100, 423 P. 2d 666 (1967), the court in a similar case said: "The police officer, when there is just cause, has a duty not only to impound a car from the public highway for its own protection, but also to inventory the contents so that they may be safeguarded for the owner. Such practice is deemed necessary to defeat dishonest claims of theft of the car's contents and to protect the temporary storage bailee against false charges. * * * If, however, the policing conduct indicates that the intention is exploratory rather than inventory the fruits of that search are forbidden. * * * Unfortunately, distinguishing inventory from exploration may prove to be ambitious and unprecise. We can only say that each case must be determined upon its own facts and circumstances."

In a similar case the Supreme Court of Washington stated: "When, however, the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory

search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed." State v. Montague, 73 Wash. 2d 381, 438 P. 2d 571 (1968). Other cases to the same effect are: St. Clair v. State, 1 Md. App. 605, 232 A. 2d 565 (1967); Cooper v. California, 386 U. S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967).

The defendant relies on Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964). In that case three suspicious men were arrested for vagrancy while in a parked car. They were taken to jail and their automobile was taken to the police station and then towed to a garage. The police then went to the garage and searched the car for evidence of crime which they found. The search was made because of the failure of any of the three men to have a title to the car and the evasive answers given to questions propounded by the police at the time of their arrest. The court held that the search without a warrant at a remote time and place under the circumstances was unreasonable. In the case before us, the search of the car was not to procure evidence of crime. The patrol had no suspicion of crime by the defendant other than the offense of intoxication. The evidence of crime was discovered incidental to the inventory of the contents of the car. The taking of the inventory, a reasonable precaution, did not constitute an unreasonable search any more than in any other case where the police stumble on to evidence of crime in the pursuance of duty. The facts in the instant case are distinguishable from Preston and require a contrary result.

The broad statements in Preston that a search and seizure in connection with an arrest must be at the time and place of the arrest is subject to some limitations. In State v. Omo, 199 Kan. 167, 428 P. 2d 768 (1967), the

court said: "The 'place of arrest' in cases involving a search of an automobile over which an accused has immediate control at the time of arrest has reference to the vehicle itself rather than its geographical location. An automible, because of its mobility, requires application of rules in the search thereof different from those governing the search of a house. * * * In Arwine v. Bannan, 346 F. 2d 458 (6th Cir. 1965), where the automobile in which the defendant had been arrested was moved to the police station before it was searched, the court stated: '* * * The place of arrest, in this case, must be considered the automobile in which Arwine was sitting when he was arrested; it was the automobile over which he had control, or in which he was legitimately present, that was the place of search. The place where the arrest was made was not the geographical area in which the car was parked; * * *.' * * * The question of reasonableness of a search must be resolved from the facts and circumstances of each particular case. Our view of the evidence in the instant case is that the arrest of the defendant, the removal of the automobile and its search were a series of events constituting one continuous happening. Under such circumstances, the search occurred substantially contemporaneous with and incidental to the arrest. The fact defendant was not present did not prevent the search from being incidental to his arrest." See, also, Fuqua v. State, 246 Miss. 191, 145 So. 2d 152 (1962), certiorari denied 372 U. S. 709, 83 S. Ct. 1018, 10 L. Ed. 2d 125 (1963); DiMarco v. Greene, 385 F. 2d 556 (1967); Boyden v. United States, 363 F. 2d 551 (1966); United States v. Blackburn, 389 F. 2d 93 (1968).

In the instant case, the evidence shows that the patrolman was not making a search at all. There was no reason to search; the sole reason for entering the car was to inventory its contents. There was not even a suspicion that defendant had committed any offense other than intoxication. As we see it, there was not

even a basis existing for obtaining a search warrant. There is no basis for a contention that the patrolman made any search of the car and it cannot therefore be said that there was an unreasonable search and seizure within the prohibition of the Constitution of the United States or the Constitution of this state.

Defendant assigns as error the failure of the trial court to acquit the defendant for the reason that the evidence shows only the possession of gaming devices and fails to show the keeping of gaming devices adapted, devised, and designed for the purpose of playing any game of chance for money or property as provided by section 28-945, R. R. S. 1943. In Glasgow v. State, 147 Neb. 279, 22 N. W. 2d 842, it was said: "From an examination of section 28-945, R. R. S. 1943, it appears that one of the essential elements is that gambling devices set up and kept be adapted, devised, and designed for the purpose of playing games of chance for money or property and the information so charges. In the submission of the defendant's guilt or innocence of the crime charged this essential element was left out of the instructions submitting that issue." In the instant case, a jury was waived and the only question is whether or not the evidence sustains a finding of guilt.

In the instant case, the dice found in the possession of the defendant were crooked. Some of the dice were rigged. There is evidence also that among the paraphernalia found was an "emergency ace supplier" by which a playing card could be passed down the sleeve for a fraudulent use in winning at cards. Such gambling devices have no lawful use and afford indisputable evidence that they were designed for use as a gambling device.

We think this case is controlled by the reasoning in People v. Hall, 56 Ill. App. 2d 7, 204 N. E. 2d 824 (1965), wherein it is said: "It is no evidence of erudition on our part to observe that these dice vary considerably in structure, design and numbering from the

normal dice utilized for either lawful or unlawful purpose. It is patent that we here deal with abnormal rather than normal dice. We think it abundantly clear that normal dice are not iniquitous per se nor within the legislative condemnation although they may become contraband if used with, a necessary part of or indubitably connected or associated with other gambling paraphernalia when seized. In short, normal dice may lose their virginity through immediate and present association. * * * Our Supreme Court supplies the principle that devices which are made or kept for gambling purposes and have no potential for lawful use are gambling devices per se and are not lawful subjects of property which the law protects. * * * We therefore conclude that they were 'designed primarily for use in a gambling place' and have no discernable potential for lawful use. As such, they are contraband and subject to seizure on sight as an incident to an otherwise lawful search."

The purpose or the intent for which an article is to be used is normally hidden within the recesses of the mind and can rarely be proved by direct evidence, but such purpose or intent may be gathered or inferred from the circumstances surrounding the case. The evidence here is sufficient for the trier of fact to find that the gaming devices were kept for illegal gambling purposes within the purview of section 28-945, R. R. S. 1943.

We find no error in the record and the judgment of the district court is affirmed.

AFFIRMED.