(No. 48085.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY VICTOR CLARK, Appellant.

*Opinion filed November 15, 1976.*

GOLDENHERSH, J., dissenting.

Ralph Ruebner, Deputy Defender, and Joshua Sachs, Assistant Defender, Office of State Appellate Defender, of Elgin (Richard J. Wilson, Deputy Defender, of Springfield, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Basil G. Greanias, State's Attorney, of Decatur (James B. Zagel, Jayne A. Carr and Brian A. David, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Jerry Victor Clark, was indicted in the circuit court of Macon County for forgery. He made a pretrial motion to suppress evidence and a motion to suppress a confession, each of which was denied. He was found guilty after a bench trial, and was sentenced to imprisonment for not less than one nor more than two years. The Appellate Court for the Fourth District affirmed, with one judge dissenting (32 Ill. App. 3d 898), and we granted leave to appeal.

The act of forgery with which the defendant was charged was the unauthorized signature of the name of a former employer on one of several blank checks stolen from the latter by the defendant. The evidence on which the defendant was convicted consisted of the forged check and a confession made to a police officer by the defendant while he was in custody after his arrest on another charge.

The defendant's motion to suppress related to other checks stolen at the same time as the one used in the forgery. Those checks were blank, but were imprinted with the name of the filling station operated by the defendant's former employer. They had been discovered in the glove compartment of the defendant's car during an allegedly illegal search by a police officer. The forged check was of course not among those found in the search of the car.

The testimony at the pretrial hearing concerning the arrest of the defendant and the subsequent search of his car was that the defendant, who was accompanied by an acquaintance named Standerfer, was driving his car on a street in Decatur when the motor stalled. A police officer

arrived on the scene as the defendant was unsuccessfully attempting to get the car started. He asked the defendant for his driver's license, but the defendant was unable to produce it. The officer, standing outside the car, observed several cans of beer in the vehicle, two of which had been opened. The defendant, as well as Standerfer, were thereupon arrested for illegally transporting alcoholic liquor, a police van was summoned, and they were taken to the police station.

Since parking was prohibited on the street where the car stalled, and since it could not be started and was blocking traffic, the arresting officer called a commercial towing company to tow it to a pound. The defendant makes no claim that either his arrest or the removal of the car was illegal.

Following the arrival of the tow truck the arresting officer made a search of the interior of the car, including the glove compartment, which was closed but not locked. It is conceded that the defendant did not request the arresting officer to search the car, and that the officer neither requested nor received permission from the defendant to search it. The officer testified that it was the policy of the Decatur police department to remove and secure any articles of value contained in any car that was to be towed away, and to prepare an inventory of them. The inventory search, he stated, was to protect the owner of the articles as well as to assist in defense against a future charge of theft.

Upon his arrival at the police station two separate interviews with the defendant were conducted, during the second of which he told the interrogating officer that some two months prior to his arrest he had stolen the blank checks found in the search of the car from a checkbook belonging to his former employer. He then went on to admit that shortly before his arrest he had made out one of the checks to Standerfer and signed the name of his former employer to it, and that Standerfer had then

cashed the check. The police officers who interviewed the defendant each testified that they had given him *Miranda* warnings at the beginning of each interview, and the defendant raises no question on that score.

In their briefs the parties engage in a broad discussion of the validity, under the fourth amendment to the Federal Constitution, of an inventory search of an impounded vehicle. The controlling decision on this issue is now that of the Supreme Court of the United States in *South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, which was rendered on July 6, 1976, subsequent to the decision of the appellate court.

In *Opperman* an unoccupied car had been ticketed twice for the same parking violation, and after the second ticketing it was towed to a police impoundment lot. Upon the car's arrival there, the police conducted an inventory search and found a plastic bag of marijuana in the glove compartment. The defendant was subsequently arrested on charges of illegal possession of marijuana, his motion to suppress was denied, and he was convicted. The Supreme Court held that the search was valid.

There is a problem in the present case as to whether the legality of the search may now be attacked. Although the parties and the appellate court appear to have proceeded on the assumption that the issue was raised by the denial of the defendant's motion to suppress, the record shows that the checks which were found in the search were never offered in evidence. The check for the forgery of which the defendant was convicted, on the other hand, was received in evidence, but it was not obtained in the course of the search, and the defendant did not include it among the items to which his motion to suppress was directed. Nor did the defendant present any evidence that the forged check was discovered as a direct result of the search rather than from an independent source.

The defendant asserts, however, that the confession

given to the police was a product of the search. In the trial court the defendant's motion to suppress that confession proceeded on a different ground, namely that the confession was not voluntary, in that it was induced by a promise on the part of the interrogating officers that charges against the defendant would not be pressed. While the defendant renewed that claim in the appellate court, he has abandoned it here.

We have some questions as to whether the confession was the direct result of the search to a degree requiring its suppression. In light of *People v. Nilsson* (1970), 44 Ill. 2d 244, 246-47, we also question whether the defendant might not be held to have waived this claim by his failure to raise it in the trial court. Since the State does not challenge the defendant on either of these grounds, however, we proceed to decide the case on the merits.

We conclude that under the decision of the Supreme Court in *Opperman* the inventory search of the defendant's car was a reasonable one and therefore not in violation of the fourth amendment. The opinion of the majority in *Opperman* mentions three legitimate objectives for an inventory search of a car: protection of police officers from potential danger, protection of the owner's property while his car is in police custody, and protection against later claims that property has been lost or stolen. (See 428 U.S. 364, 368, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3096.) The circumstance that the defendant was present so that the arresting officer could have requested his consent does not satisfy these objectives.

The defendant also argues that an inventory search should in any event be confined to articles in plain view, and that the search of the closed glove compartment was improper. This contention, too, loses sight of the purposes of the search. As the Supreme Court pointed out in *Opperman,* the glove compartment "is a customary place for documents of ownership and registration *** as well as a place for the temporary storage of valuables." See 428

U.S. 364, 372, 49 L. Ed. 2d 1000, 1007, 96 S. Ct. 3092, 3098.

The defendant's next contention is that the purpose of protecting the contents of the car could be achieved simply by rolling up the windows of the car and locking the doors. But as Mr. Justice Powell noted in his concurring opinion in *Opperman,* those precautions may not result in an equal degree of security, unless a guard is posted at the impoundment lot. And as Mr. Justice Powell observed, "[T] hat alternative may be prohibitively expensive, especially for smaller jurisdictions." 428 U.S. 364, 379, 49 L. Ed. 2d 1000, 1011, 96 S. Ct. 3092, 3101.

The defendant suggests that what is ostensibly an inventory search may serve as a subterfuge for an investigatory search whereby the police may explore the interior of the car to look for evidence of criminal conduct. We think the short answer to this objection is that the testimony here was that inventory searches were routinely made in all cases where it is necessary to tow a car away, and there is no hint whatever of any improper motive of that sort on the part of the arresting officer.

The defendant's final contention is that even if the search did not violate the Federal Constitution, it did nevertheless violate article I, section 6, of the Illinois Constitution. The defendant states, "The Illinois Constitution, with its particular recognition of the overriding right to individual privacy, compels a different result from the more weakly framed Fourth Amendment."

We do not agree. It is of course true that section 6 of article I contains references to "invasions of privacy or interceptions of communications" which are not found in the fourth amendment. The portion of section 6 which deals with unreasonable searches, however, is patterned after the fourth amendment, and the defendant suggests no reason for construing the section as imposing additional conditions which must be met before a search may be deemed a reasonable one. For the reasons given earlier, as

well as those stated in *People v. Smith* (1969), 44 Ill. 2d 82, we hold that the inventory search conducted here was a reasonable one under the Constitution of Illinois as well as that of the United States. The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The majority has seized on *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, to uphold a search patently violative of rights guaranteed to the defendant under the fourth amendment to the Constitution of the United States and article I, section 6, of our State Constitution. *Opperman,* in my opinion, was wrongly decided and I can add nothing to Mr. Justice Marshall's devastating refutation of the fallacies upon which the plurality and concurring opinions rest. The decision in *Opperman* will accelerate the "slow strangulation of the [exclusionary] rule" (*United States v. Peltier,* 422 U.S. 531, 561, 45 L. Ed. 2d 374, 395, 95 S. Ct. 2313, 2330) so eloquently condemned by Mr. Justice Brennan. (See also *United States v. Janis,* 428 U.S. 433, 460, 49 L. Ed. 2d 1046, 1064, 96 S. Ct. 3021, 3035; *Stone v. Powell,* 428 U.S. 465, 496, 49 L. Ed. 2d 1067, 1092, 96 S. Ct. 3037, 3055.) I would reverse the judgment.