THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE T. HAMILTON, Defendant-Appellant.

Fourth District   No. 14156

Opinion filed January 6, 1978.

TRAPP, J., dissenting.

Thomas J. Maloney and Richard H. Devine, both of Chicago, for appellant.

Thomas J. Difanis, State's Attorney, of Champaign (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

While driving a van at approximately 1:15 a.m. on August 14, 1975, defendant was involved in an accident on interstate 57 near Pesotum, Illinois. An ambulance soon arrived and took defendant to the Burnham City Hospital in Champaign. Still conscious, defendant carried a locked attache case with him in the ambulance.

State Trooper Forrest Clark gathered information at the scene and noted that the wrecked van contained a large amount of personal belongings including several .38-caliber bullets. He attached no particular significance to them. It was not illegal to have ammunition. The van was towed to a garage for safekeeping and the officer went to the hospital to gather more information for his report.

At the hospital an attendant placed defendant's attache case on the cart used to transport defendant to the emergency room. There defendant was attended to by Nurse Mary Waters and Orderly Jeff Olson. They removed the defendant's outer clothing, examined him for injuries and treated him for minor cuts. When he was later taken out of the emergency room for X rays, the nurse and the orderly inventoried the defendant's possessions. They found a wallet, a watch, 10 or 12 keys, 3 bullets, and over $1,200 in cash including one $500 bill and several $100 bills. While defendant was in X ray, Orderly Olson opened the attache case with one of the keys. In it he saw a large number of papers, a pocket calculator and a brown paper bag with a string around it. He removed the band and looked inside observing a powdery substance. He told Nurse Waters that he thought it was heroin, but she did not see the powder herself. He then closed the case and locked it.

When Trooper Clark arrived at the hospital around 3:30 or 4 a.m. to interview the defendant and complete his report, he was advised that the defendant was still in X ray. A nurse at the desk outside the emergency room told him that Hamilton had a large number of keys, an attache case

and a considerable amount of money. He was further advised that the hospital would lock up the money and the wallet. He was asked if he was going to take the attache case or leave it and he said he would take it to the vehicle with the rest of defendant's belongings.

After he was advised that the defendant had returned from X ray, the trooper went to the emergency room and talked to him about the cause of the accident and the large amount of personal property in the van. He advised the defendant about the accident reports that were necessary, where the van was located and where his personal property would be. The trooper told him that his wallet and personal effects would be at the hospital, together with a copy of the trooper's report, but that he would take the attache case and keys which would be inventoried with all his other personal property and locked in the van.

Nurse Waters and Trooper Clark had a brief conversation pertaining to the items of personal property. She told the trooper to go through the defendant's briefcase but did not indicate that she knew what it contained or that it had been opened. Orderly Olson testified that he was scared to be the one who found the heroin or turned it over to the police and he said nothing to the trooper. Trooper Clark then testified he picked up the case, opened it, preparing to rake the keys upon the counter top into it, when he noticed a clear, plastic envelope containing what appeared to him to be marijuana. He then saw the brown paper bag and looked inside, discovering what he thought was some kind of opium. Thereupon, he took the attache case from the room. Later, Trooper Clark turned the briefcase and its contents over to a detective who then field-tested the two bags and determined that one contained opium, the other cannabis. The detective signed a complaint against defendant later that day and he was arrested on August 15, 1975. Several days later, the Illinois Bureau of Investigation lab in Springfield determined that one bag contained 74.2 grams of heroin.

Prior to trial defendant filed a motion to suppress the evidence as being the fruit of an unreasonable search. The trial court denied defendant's motion and following a bench trial, defendant was convicted of possession of more than 30 grams of heroin in violation of section 402(a) of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a)). He was sentenced to serve 4 to 5 years' imprisonment and fined $2,500 and costs.

■■ The sole issue raised on appeal is whether the heroin found in defendant's briefcase should have been suppressed as the fruit of an unconstitutional search and seizure. The trial court found:

"There was no governmental participation to any degree in the initial discovery of the evidence. The Fourth Amendment is not

applicable under these circumstances and the Motion to Suppress the Evidence in question is denied."

While relying on that rationale for its decision, the trial court also found that, in the alternative, the evidence would have been admissible under the "plain view" doctrine. In addition to these two theories, the State contends that the evidence was admissible, having been discovered in the course of a standard inventory of an impounded vehicle. We shall consider each of these theories, since the judgment may be sustained on any ground warranted in the record, irrespective of whether the particular reasons given or specific findings of the trial court are correct. *City of Rockford v. Maxwell* (1968), 92 Ill. App. 2d 336, 234 N.E.2d 563.

■■ First of all, we recognize that the fourth amendment was intended to be a restraint upon governmental authority and not a limitation upon private persons. Evidence of crimes obtained as a result of searches by private individuals are not subject to the bar of the fourth amendment. (*Burdeau v. McDowell* (1921), 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574.) However, *Burdeau* is not in point since there the police took no part in the wrongful seizure of the incriminating papers and they came into the possession of the government without a violation of defendant's rights by governmental authority. Here Trooper Clark was not handed the narcotics by the orderly or the nurse. Rather, the seizure was the direct result of a second search conducted by the officer himself. Hence, we have a situation where the government agent recovered the incriminating evidence pursuant to his own efforts.

The People rely on *United States v. Winbush* (6th Cir. 1970), 428 F.2d 357, *cert. denied* (1970), 400 U.S. 918, 27 L. Ed 2d 157, 91 S. Ct. 179, and *United States v. Diggs* (3rd Cir. 1976), 544 F.2d 116, in support of their argument. Neither case is in point.

In *Winbush,* a hospital employee discovered contraband while routinely inventorying the contents of defendant's clothing. Unlike here, the hospital employee then handed the evidence to the arresting officer, obviating the need for, or any inference that there was, participation in the search by the governmental authorities. *Diggs* was concerned with the validity of the consent to a warrantless search given by a custodian of defendant's property who had been unwittingly involved by the defendant in his alleged crime. *Diggs* held that the unwitting bailee of a box suspected of containing stolen money had a right to exonerate himself from the crime which prevailed over defendant's fourth amendment right and justified a warrantless search. This problem is not present in the instant case and there is no indication that the hospital personnel were even arguably implicated in defendant's activities by virtue of their

possession of his briefcase. Unlike *Diggs*, here it cannot be reasonably argued that defendant surrendered possession of his briefcase to the hospital employees as bailees implicitly authorizing a search of its contents.

■■ We believe that the trial court's opinion is in error and misinterprets the private search cases. The finding that "there was no governmental participation to any degree in the *initial* discovery of the evidence" (emphasis added) misses what we believe to be the critical point. Here there were two searches and we cannot be concerned only with the initial one. The evidence was seized *after* the second search, conducted by Officer Clark. The first search was unrelated to and not suggestive of the second search. His reasons for opening the briefcase are totally irrelevant since defendant had a reasonable expectation of privacy. This reasonable expectation was afforded the protection of the fourth amendment. Defendant did not waive these rights either expressly or impliedly. Consequently, the search made by the policeman without a warrant violated defendant's fourth amendment rights and the evidence seized during this search is inadmissible. *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.

We also are unpersuaded that the evidence seized was admissible under the "plain view" doctrine. In *Harris v. United States* (1968), 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069, 88 S. Ct. 992, 993, this theory of admissibility was articulated as follows:

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

■■ The trial court analogized the situation here to that in *Harris* where, while impounding defendant's car following his arrest, a police officer noticed the incriminating evidence in plain view inside the car. There was no question but that the officer was lawfully inside the car. The fallacy in the trial court's reasoning here is that it ignores the critical distinction between the police being in lawful possession of defendant's briefcase and their being lawfully inside of it.

Finally, we consider the State's argument that the evidence was admissible under the inventory search exception approved by the Supreme Court in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, and by our own supreme court in *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798. The State contends that Officer Clark was going to inventory defendant's van and its contents and that the briefcase would have been opened during this procedure anyway. Moreover, they argue that Officer Clark was not conducting a search, but merely an inventory. This argument is apparently based on

the premise that an automobile inventory, as in *Clark* and *Opperman*, is not a search in the constitutional sense. We reject that contention for several reasons.

Several State court decisions have concluded that an inventory examination is not a search. (*People v. Sullivan* (1971), 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464; *State v. Wallen* (1970), 185 Neb. 44, 173 N.W.2d 372, *cert. denied* (1970), 399 U.S. 912, 26 L. Ed. 292, 90 S. Ct. 1874.) However, other courts have held to the contrary. In *State v. Jenkins* (Fla. App. 1975), 319 So. 2d 91, the court stated that "[r]egardless of the resort to a play on semantics suggesting that a distinction exists between an 'inventory' and a 'search' an 'inventory' search is a 'search' within the Fourth Amendment prohibition against unreasonable searches and seizures * * *." 319 So. 2d 91, 93.

Likewise, in *Mozzetti v. Superior Court* (1971), 4 Cal. 3d 699, 484 P.2d 84, 94 Cal. Rptr. 412, the California Supreme Court considered the precise question and saw no discernible fourth amendment distinction between an inventory and a search. "It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. * * * Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions." 4 Cal. 3d 699, 705-06, 484 P.2d 84, 88, 94 Cal. Rptr. 412, 416.

The Eighth Circuit Court of Appeals took much the same approach in *United States v. Lawson* (8th Circ. 1973), 487 F.2d 468, criticizing those cases which hold that an inventory may not be a search.

> "This seems a highly anomalous position. Officers apparently are to be placed in a better position when they have no reason to search, since then a general exploratory 'inventory' will be upheld; while if required to get a warrant they would have to describe with particularity the things to be seized. Both of the above decisions (*Wallen* and *Sullivan*) are based upon a highly technical construction of the meaning of 'search,' unwarranted in our view of the Fourth Amendment. To consider an inventory procedure not to be a 'search' does violence to the concept of the Fourth Amendment as a protection of the privacy of the citizenry against unwarranted invasion by government officials." 487 F.2d 468, 472.

We are persuaded that *Jenkins, Mozzetti* and *Lawson* reach the

proper decision. We follow those cases here and hold that Officer Clark's intrusion into defendant's briefcase was indeed a "search" subject to the fourth amendment standards of reasonableness.

The State essentially argues that Officer Clark's conduct was a reasonable police procedure, both for the protection of defendant's property and in safeguarding the police against later claims of theft. This argument ignores the property owner's interest in safeguarding his possessions from unreasonable police intrusions. As stated in *Lawson*, "A rule that upon a showing of a legitimate governmental interest, the constitutional protections of citizens must give way, would eliminate those protections in the very situations for which they were intended. * * * A police duty to safeguard the owner's property does not automatically give the police the right to search." 487 F.2d 468, 475.

Both *Opperman* and *Clark* involved inventories of automobiles following traffic or parking violations. The police inventory in both cases disclosed evidence of more serious, unrelated crimes. In each case the police apparently had no preconceived notion or suspicion of what they would find. Nevertheless, the courts in both cases analyzed the police intrusions as if they were searches by subjecting them to the fourth amendment test of reasonableness. Our supreme court in *Clark* did not advert to any distinction between the two terms and at all times treated the intrusion as a search. In *Opperman,* the court discussed the fact that courts which have expressly reached the issue have split on the result. (428 U.S. 364, 371, 49 L. Ed. 2d 1000, 1006, 96 S. Ct. 3092, 3097, (see text and note 6).) However, since at oral argument the State abandoned its argument that the intrusion was exempt from the fourth amendment standards of reasonableness, the supreme court in *Opperman* treated it as a search.

■■ In applying the reasonableness standard to the present case, we find that the search here was unreasonable. Theoretically, two justifications for inventory searches of motor vehicles are to protect the owner from theft and to assist the police in defense against a future charge of theft. (*Clark.*) Here neither of these considerations is significant enough to outweigh defendant's fourth amendment rights. The briefcase was already at the hospital and could have been left there instead of taken back to defendant's van. Also, the nurse asked Officer Clark if he would be taking the briefcase or whether he was going to leave it. Officer Clark chose to take the briefcase while leaving the defendant's watch, some rings, a wallet containing money and several rounds of ammunition, and defendant's clothes. Since defendant was fully conscious, the briefcase could have easily been left in his possession rather than taken to some parking lot to be stored in a locked van. It would seem to us that if an inventory and subsequent impoundment are to offer defendant the most

protection for his property, then *all* of the defendant's belongings would have been taken by Officer Clark. Why the briefcase was taken "for protection" and not the other items is a mystery that escapes us.

With respect to the interest of the police in protecting themselves from charges of theft, again the State's argument would be more persuasive had they seized all of defendant's belongings in order to conduct a complete inventory. Officer Clark testified that he did not even see what was done with the defendant's watch, the rings or the ammunition found in his pockets. Thus, the concern for protecting the police's interest at stake here fades in fact in view of its inconsistent application.

The Supreme Court's recent decision in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, further supports our conclusion that the search here was unreasonable. While we recognize that *Chadwick* dealt with a probable cause search, one where the police knew what they were looking for and could have easily obtained a warrant, the opinion is helpful here in distinguishing the privacy aspects of an automobile vis-a-vis an item of personal luggage. The court explained that its treatment of warrantless searches of automobiles has been based (1) partly on their inherent mobility, and (2) upon the diminished expectations of privacy that surrounds a motor vehicle. The court's comments regarding the footlocker in *Chadwick* seem apropos to the briefcase here: "A person's expectations of privacy in personal luggage are substantially greater than in an automobile." (433 U.S. 1, 10, 53 L. Ed. 2d 538, 549, 97 S. Ct. 2476, 2484.) Nor does the mobility aspect, which has in part led the court to dispense with the warrant requirement in vehicle searches, have application here. Officer Clark had no probable cause to search and made no claim that an immediate search was exigent or that defendant would dispose of the evidence.

Finally, we note that neither *Opperman* nor *Clark* stand for the proposition that a locked container found inside an automobile could be searched pursuant to the inventory exception. In *Chadwick,* Justice Brennan specifically noted in footnote 6 of his concurring opinion that "while the contents of the car could have been searched pursuant to the automobile exception, it is by no means clear that the contents of locked containers found inside a car are subject to search under this exception, any more than they would be if the police found them in any other place." 433 U.S. 1, 12, 53 L. Ed. 2d 538, 552, 97 S. Ct. 2476, 2486.) Clearly, defendant has a greater expectation of privacy in such a case. Yet both the government's and the defendant's interests in protecting the property could be adequately insured by merely assuming that the contents of the case are valuable and locking it up wherever the police store valuables that they come across in the process of inventory. This, we feel, strikes a much more reasonable balance of the competing interests

than what was done here. Since the policies behind the automobile inventory search exception do not apply, and the facts undermine the need for an inventory procedure to protect either defendant or the police here, we feel that the search was unreasonable under the fourth amendment and the fruits must be suppressed.

For the foregoing reasons, the judgment of the circuit court of Champaign County is reversed and remanded with directions to grant defendant's motion to suppress.

Reversed and remanded.

REARDON, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

I conclude that the inventory examination made here was reasonable under the circumstances shown in this record.

Upon the suggestion that the briefcase could have been left at the hospital, the record shows that its estimated dimensions were 2 feet by 1½ feet by 4 inches. In the emergency room valuables were kept in a locked box. If a patient was admitted to the hospital, inventory items of value were kept in a safe. One may conclude that a briefcase of such dimensions could not be readily accommodated in the hospital security facility.

As for the suggestion that the case could have been left at the hospital with the patient, it appears that the hospital did not consider such form of safe keeping acceptable as to matters of value. Upon the suggestion that to be logical the officer, Clark, should have taken the money, wallet and rings, the record supports a conclusion that those items could be placed in a hospital property envelope. One may infer that the hospital had an interest in maintaining access to the currency.

The record shows that the van was to be moved to private storage facilities which were not known to be secure. Such fact is different than that in the cited *Mozetti v. Superior Court* (1971), 4 Cal. 3d 699, 484 P.2d 84, 94 Cal. Rptr. 412, where the vehicle was left in a secure police storage area.

Officer Clark testified to the inventory procedure of the State Police initiated some 30 years before and to the experience of pilferage and breaking into stored vehicles. He, Clark, had already been advised of the finding of a large sum of currency on defendant's person. A briefcase is known to be used to carry sums of money and is an obvious target for pilferage from a stored vehicle. In *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798, defendant argued that the car might simply have been locked and that it was unnecessary to inventory the glove compartment.

The opinion noted that such procedure did not provide actual security to valuables.

In *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, it is stated:

> "The decisions of this court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable.* * *." (428 U.S. 364, 372, 49 L. Ed. 2d 1000, 1007, 96 S. Ct. 3092, 3098.)

That opinion noted that even if an inventory procedure is characterized as a "search," the intrusion is constitutionally permissible. The question is whether the search was reasonable under the fourth amendment. (*Cooper v. California* (1967), 386 U.S. 58, 61, 17 L. Ed. 2d 730, 733, 87 S. Ct. 788, *South Dakota v. Opperman* (1976), 428 U.S. 364, 372, 49 L. Ed. 2d 1000, 1007, 96 S. Ct. 3092, 3098.) The test of reasonableness cannot be fixed by *per se* rules but each case must be decided upon its own facts. *South Dakota v. Opperman* (1976), 428 U.S. 364, 373, 49 L. Ed. 2d 1000, 1007, 96 S. Ct. 3092, cites *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

Although the fact of defendant's possession of heroin appears in the record, it is to be recalled that when Clark took possession of the briefcase he was not advised that the hospital staff had discovered contraband as they examined the briefcase. He had acted throughout to protect the property of the defendant at the scene of the accident and at the hospital. The evidence is that the briefcase was opened at the bedside of the defendant incident to placing numerous keys inside the briefcase which appears to be a logical and reasonable act. Defendant was advised that such step would be taken and it does not appear that he made any comment.

The record shows that the hospital considered the examination of all items of property, including the contents of the briefcase to be a reasonably necessary procedure both for the patient and for the hospital. One can see no logical reason for providing a greater standard for the police when caretaking obligations are imposed on them.

In *People v. Smith* (1969), 44 Ill. 2d 82, 254 N.E.2d 492, a police officer providing care for an injured man took possession of his wallet, although such act was not required to establish identity. The subsequent inventory of its contents disclosed incriminating matter. The court determined that the inventory of property coming into the possession of the police was a reasonable procedure and that the discovery of incriminating matter did not convert the inventory process into an illegal search.

In *United States v. Gravitt* (5th Cir. 1973), 484 F.2d 375, *cert. denied* (1974), 414 U.S. 1135, 38 L. Ed. 2d 761, 94 S. Ct. 879, the court said:

"[W]hen the police take custody of any sort of container [such as] an automobile * * * it is reasonable to search the container to itemize the property to be held by the police. [This reflects] the underlying principle that the fourth amendment proscribes only *unreasonable* searches."

See also *People v. Sullivan* (1971), 29 N.Y.2d 69, 323 N.Y.S. 2d 945, 272 N.E.2d 464.

Despite the authorities discussed, this court is imposing a *per se* rule.