**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Chester JONES, Defendant-Appellant.**
**No. 13512.**

United States Court of Appeals
Seventh Circuit.

May 1, 1962.

George N. Leighton, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John P. Lulinski, Asst. U. S. Atty., Chicago, Ill., Robert F. Monaghan, Asst. U. S. Atty., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

On this appeal, Chester Jones, defendant, asks us to reverse a judgment of the district court finding him guilty on all counts of an indictment, three of which charge sales of heroin and three of which charge possession of that drug, in violation of specified statutory provisions, as amended by the Narcotics Control Act of 1956.

A trial by jury was waived and defendant was tried by the court.

In this court the errors relied upon arise out of (1) the defense of entrapment and (2) the use of allegedly prejudicial testimony.

The principal witnesses for the government were William R. Jackson, a narcotics agent, and a gentleman with many names and an imposing criminal

record, whom we shall refer to usually as Wheeler.

■ 1. To sustain his contention as to the defense of entrapment, defendant relies on Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and Sherman v. United States, 356 U.S. 369, at 373, 78 S.Ct. 819, at 821, 2 L.Ed.2d 848, in which it was held that the undisputed testimony of government witnesses established entrapment as a matter of law.

Wheeler testified that he had known defendant for some months prior to May 13, 1960; that Wheeler had been engaged in the sale of narcotics for some time; that he was getting his narcotics from different sources, some from defendant and some from other sources.

There was evidence that, on May 13, 1960, Wheeler and Agent Jackson went to a gasoline filling station operated by defendant. Wheeler told Jones that he was ready to do business. Jones asked Wheeler how many "spoons" he wanted, and upon his response that Wheeler would take two, Jones said the price would be $250. Payment was made to Jones by Wheeler. Some time later Jones left the station accompanied by Wheeler. Wheeler and Jones went to Jones' home, where Jones gave Wheeler the "two spoons" of heroin. Wheeler then went back to the station and met Agent Jackson.

There was evidence that on May 19, 1960, Wheeler and Jackson once again went to the station of defendant. Jones asked them how much "stuff" they wanted. Jackson told Jones that they would like to get two "spoons". Jones then stated that the price for the two "spoons" would be $260 because it was a little heavier this time. Jackson handed the money to Wheeler who gave it to defendant, who left the station and returned at about 7:00 P.M., walked over to Wheeler's automobile, and tossed two aluminum foil packages of heroin into Wheeler's car between Wheeler and Agent Jackson. Jackson took possession of the packages of heroin.

Prior to June 15, 1960, defendant asked Agent Jackson when he and Wheeler were coming back again for some more "stuff" and was told they would see him in a few days. About 8:10 P.M. on June 15, Agent Jackson went to defendant's station and told him he would like to get two "spoons" of heroin. Defendant reached down into his left sock and abstracted two aluminum packages which he placed in a brown paper bag, which he gave to Jackson. Jackson then paid defendant $250 of government funds. Defendant then took a card and wrote a telephone number on it, and told Jackson that he could reach him at any time that Jackson wanted to get some more heroin.

At the conclusion of the government's case, defendant, testifying in his own defense, stated that he had known Wheeler as Bob Willard and that it was Wheeler who furnished him with the narcotics, which he in turn sold Agent Jackson.

Wheeler, who had already testified for the government and had been cross-examined by defense counsel, was not again called as a witness by the government or as a witness by defendant.

Defendant complains that the government failed to call Wheeler to rebut, deny or contradict "the explicit sworn testimony of the defendant". Undoubtedly government counsel were content to rely upon the other evidence in the record for that purpose.

■ 2. In the trial of the case and the determination of issues of fact involved therein, including those pertaining to the defense of entrapment, the ascertainment of the facts of the court included a determination of the credibility of the witnesses. Absent an abuse of discretion, and none is here charged or revealed by the record, this court will accept the result reached by the district court, trying the case without a jury, insofar as a determination of the facts is concerned. United States v. Ziemer, 7 Cir., 291 F.2d 100.

■ 3. On the subject of entrapment, this court has repeatedly applied the principles announced by the Supreme

Court in Sorrells v. United States, supra. We did so in United States v. Perkins, 7 Cir., 190 F.2d 49, 51–53 (1951), where Judge Duffy, in an exhaustive review of the authorities, made this statement, at 52:

> "We find ourselves in accord with the opinion by Judge Learned Hand in United States v. Chiarella, supra, where he quotes from an earlier opinion of the court written by him. United States v. Becker, 2 Cir., 62 F.2d 1007: 'We said then, * * * that it was not a defence if the accused was already engaged (1) in "an existing course of similar criminal conduct"; (2) had "already formed a design to commit the crime or similar crimes"; or (3) was willing to do so "as evinced by ready complaisance." ' "

In the case at bar it appears clear to us from the evidence in the record that defendant was already engaged in an existing course of similar criminal conduct, had already formed a design to commit similar crimes, and was willing to do so "by ready complaisance".

We therefore conclude that there was no entrapment and that the district court was not in error in failing to sustain that defense.

▇ 4. Defendant also contends that he was denied a fair and impartial trial by the conduct of the prosecuting attorney who elicited from the government witness, Colie Wheeler, prejudicial and inflammatory testimony to the effect that Wheeler had been engaged in the narcotic traffic with a large number of people, none of whom was connected with the defendant in any way.

As we have stated, *ante* 2, Wheeler testified that he was getting narcotics from different sources, including defendant. This was after the court had overruled defense counsel's objection that

> "What difference does that make in the trial of this case where he was getting narcotics that he was selling to Jackson? The only thing that can possibly do, Judge, is en-

deavor to inflame the Court against the defendant otherwise what difference would it make, and how would that be of any assistance to Your Honor to determine the issues before the Court here now?"

Therefore, following cross-examination of Wheeler by defense counsel, the witness testified on re-direct examination that he was getting his narcotics from different sources and named, in addition to defendant, men called Ruso, Peter Paul and Perry Sarton.

The questions put by government counsel to Wheeler on re-direct examination were relevant and proper. No objection was made that they were beyond the scope of the cross-examination. We find no error in respect thereto. The testimony thus elicited was competent and relevant. It was neither prejudicial nor inflammatory.

For these reasons the judgment of the district court is affirmed.

Judgment affirmed.