THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT D. MONTGOMERY, Defendant-Appellant.

(No. 57173;

First District (3rd Division)—March 21, 1974.

Michael P. Toomin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and James Staruck, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Robert D. Montgomery, was charged with attempt murder and aggravated battery upon Justo and Angel Rivera. A jury found him guilty of both charges as to Justo Rivera, guilty of aggravated battery upon Angel Rivera, and not guilty of attempt murder of Angel Rivera. The court imposed one sentence for the crimes against Justo Rivera, and sentenced defendant to a term of 5 to 15 years for attempt murder. The trial court sentenced defendant to a term of 5 to 10 years for the aggravated battery upon Angel Rivera. The sentences were to run concurrently. Brian Pace was charged with the same crimes, was tried in absentia with defendant, and is not involved in this appeal. Defendant contends that the trial court erred in precluding him from introducing into evidence

a statement attributed to the absent Pace, in failing to tender to the jury certain instructions and verdict forms requested by defendant, in entering judgments of guilt on verdicts predicated upon the same act or series of acts, and in sentencing him to a term of years for the aggravated battery upon Angel Rivera unsubstantiated by the jury verdict.

Defendant and Pace were both present in court when the trial judge commenced jury selection. On the morning of the second day of voir dire, the privately retained counsel representing both defendants informed the court that he did not know the whereabouts of Pace. In response to the court's inquiries, defendant stated that he had not seen Pace since early the previous evening and that he doubted that Pace would voluntarily return to the trial. After discussing with the prosecutor and defense counsel the possible legal consequences of Pace's abrupt departure, the trial judge concluded that the proceedings had reached a point whereby jeopardy had attached to Pace and that his absence could be deemed a voluntary waiver of his constitutional right to be present at trial, thus enabling the State to try him in absentia with defendant. After the court denied defense counsel's motion to withdraw as attorney for Pace, the voir dire continued. Pace did not reappear at trial.

On the next day, defense counsel moved on behalf of Pace for a severance. Without detailing the substance of the communications, defense counsel stated that, as a result of a meeting he had with defendant on the previous evening, he would offer in evidence a certain statement that would tend to exonerate defendant at the expense of inculpating Pace. Counsel attempted to justify the untimeliness of the motion by claiming that Pace's absence had triggered defendant's remarks to him. The trial court reserved ruling on the motion, and the State commenced putting in its evidence.

Eight eyewitnesses, including the victims, testified for the State. On August 10, 1969, defendant and Pace interrupted a baseball game engaged in by the Rivera family in Lincoln Park in the city of Chicago, seeking to join the game. The father, Justo Rivera, refused, saying that they were ready to quit and go home. Defendant walked about 20 feet away, but Pace insisted that he be given the bat and the ball. An argument ensued, and Pace struck Justo Rivera, threatening to kill him. Defendant ran over, grabbed Justo from behind, locked the father's arms over his head, and held him while Pace continued to punch Justo. Eleven-year-old Angel Rivera came to his father's defense and struck both assailants with a baseball bat. While defendant maintained his hold on Justo Rivera, Pace chased Angel and, upon catching him, first kicked and then struck the boy with the bat several times on the head,

causing blood to flow down the youth's face. Pace then returned and, as defendant continued to hold Justo, hit the latter several times with the bat until he fell unconscious to the ground.

James O'Kennard testified for the State to a similar set of facts. On cross-examination, the witness recalled his observations of Pace and defendant during the attack. O'Kennard stated that Pace appeared to be under the influence of heroin. O'Kennard testified that defendant's reflexes appeared better than Pace's, and characterized defendant's eyes as normal and his facial expression as not unusual.

Gerald Stevens testified for the State and supported the Riveras' account of what had occurred. In his opinion neither Pace nor defendant had been under the influence of alcohol or drugs. On cross-examination, the witness admitted telling a defense investigator that the two assailants were "obviously higher than kites."

Dennis McQuen, a friend of defendant and Pace, testified for the defense that the three of them had spent the afternoon listening to a rock festival in the park. Although other members of the group had popped pills and smoked marijuana that afternoon, he did not see either Pace or defendant indulge in anything except wine. The witness stated that both men were very drunk, but conceded that he himself had been intoxicated at the time he observed defendant's condition.

Defendant testified that he had consumed approximately 2 quarts of wine over a 4-to-5-hour period on the afternoon preceding the occurrence. Although he recalled seeing white pills in the possession of some of his companions, he did not recall taking any. He further testified that he had no knowledge of anything that took place subsequent to the time Pace and he left the group in search of more wine. On cross-examination, defendant conceded that he had been lucid enough to remember the amount of wine he had drunk and the manner in which he had been arrested.

After the defendant had replied affirmatively to his counsel's question, "Do you know today whether you consumed any pills at that particular place?", the State objected and a hearing was held outside the jury's presence. To the State's contention that the answer was incompetent as hearsay, defense counsel responded by making an offer of proof that, if the witness were permitted to testify, he would state that, on the evening of Pace's disappearance prior to trial, Pace told defendant that he was responsible for getting defendant into the present predicament because he had placed pills in defendant's drink prior to the attacks on the Riveras. Defense counsel stated that it was this information that had been the basis for his earlier motion for a severance. The trial judge

held that the statement did not qualify as an exception to hearsay, and struck defendant's answer. The court also denied the motion for severance.

Defendant's first contention is that the trial court erred in denying defendant the right to introduce into evidence a statement attributed to the absent Pace which allegedly supported one of his defense theories. An ancillary position taken by defendant is that the court erred in denying the motion for a severance.

■■ Defendant is in no position to question the propriety of the court's action in denying the motion for severance. The motion was expressly made on behalf of Pace because. defense counsel feared the statement's admission into evidence would impair the rights of Pace, not defendant. Hence the issue is not properly appealable by defendant. In any event, we are unable to discern how the defendant could have been prejudiced by the court's action in denying the motion for severance. Had the court granted the motion made on behalf of Pace, the defendant would have had no way of properly introducing the statement into evidence. The statement was clearly hearsay because it was intended to prove the truth of the matter asserted. Defendant asserts that in the event of a severance the statement would have qualified as an exception to the hearsay rule since it constituted "an admission by an indicted co-defendant not joined at trial." Such an assertion is not encompassed within any of the established hearsay exceptions, is not supported by any legal authority, and is rejected by this court.

■■ Defendant argues, however, that the statement qualified as a party-admission and, therefore, is an exception to the hearsay rule, and should have been admitted into evidence. We believe that there are significant differences between the party-admission exception to the hearsay rule and the statement proffered in the present case. In the first place the party-admission exception only applies when the statement is sought to be introduced by a party-opponent (McCormick, *Evidence*, ch. 26, p. 628 (2d ed. 1972); Clearly, *Handbook of Illinois Evidence*, § 17.11, pp. 280-281 (2d ed. 1963)), since the admissibility is based upon the adversary theory of litigation. (Morgan, *Basic Problems of Evidence* 265 (1962).) Here, defendant Montgomery, not the State, sought to introduce the statement of his codefendant Pace. The adversary nature of the proceedings makes a second distinguishing factor evident. The underlying reason for introducing a statement attributed to a party-opponent is, naturally, to use the statement substantively against him. Here, however, the defendant was disinterested in using the statement against the absent Pace. He sought to introduce the statement solely to exculpate himself. A third important element goes to the very roots

of the party-admission exception to hearsay. This exception is not affected by the hearsay rule, which excludes extra-judicial assertions if there was no opportunity to cross-examine, because it is the party-opponent's own statement and he need not cross-examine himself. It is said that the hearsay rule is thus satisfied since the party "now as opponent has the full opportunity to put himself on the stand and explain his former assertion." (4 Wigmore, *Evidence*, § 1048, pp. 2—5 (3d ed. 1940).) Yet, in the instant case, not only did Pace voluntarily absent himself from trial, but it was codefendant's own attorney who sought to have the statement admitted. We conclude that the statement did not qualify as a party-admission exception to the hearsay rule, and that the trial court properly excluded it.

Defendant's next contention is that the trial court erred in refusing defendant's verdict forms for simple battery. Moreover, he argues that the State's failure to address itself to this issue in its brief amounts to a confession of error.

■■ Under Supreme Court Rules 341(e)(7) and (f), the failure of an appellee to argue a point in its brief waives the issue for purposes of oral argument. However, this procedural rule does not deprive us of jurisdiction, and in our discretion, as we so decide in the instant case, we may determine the issue ignored in appellee's brief. *People v. Marro* (1972), 4 Ill.App.3d 197, 280 N.E.2d 560; *People v. Keeney* (1968), 96 Ill.App.2d 323, 238 N.E.2d 614.

■■ A defendant tried for aggravated battery is not entitled to have the court tender a verdict form to the jury on the lesser-included offense of simple battery in the absence of evidence in the record to support that offense. (*People v. Day* (1972), 2 Ill.App.3d 811, 277 N.E.2d 745.) Defendant did not dispute at trial the eight eyewitness accounts depicting how he held Justo Rivera while Pace struck first Angel and then Justo repeatedly with a baseball bat. Although Angel did not remain at the hospital, he was taken immediately to a hospital for treatment and to receive stitches. He was also confined to his home for about 10 days and at the time of trial he bore a scar on his head. Justo Rivera was in the hospital for 21 days in critical condition, having sustained a fracture of the skull. Since the evidence in the record indisputably satisfied the elements which distinguished aggravated battery from simple battery, no instruction for the crime of simple battery had to be given.

■■ Defendant next argues that the court's failure to instruct the jury on the statutory definitions of the terms "intentionally" and "knowingly" constituted prejudicial error. The record reveals that the trial judge properly instructed the jury on all the elements of the crimes with which defendant was charged, on the theory of accountability, and on the

affirmative defense of intoxication. We reject defendant's contention that the failure of the court to further define the above two terms, found in several of the instructions, made it impossible for the jury to determine defendant's conduct with respect to any ascertainable standard.

To define the terms "intentionally" and "knowingly" in the context of the intoxication instruction would not have aided the jury. "Intoxication" is a self-defining term well within the comprehension of the jury. The jury was informed that the defendant bore no criminal responsibility if it found that defendant was intoxicated at the time of the attacks. We further believe that under these facts and circumstances the instructions in question would not have been helpful to the jury in the context of enlightening the jury more concerning the substantive elements of the crimes charged. Both terms have plain meanings within the jury's common knowledge. *People v. Wick* (1970), 125 Ill.App.2d 297, 260 N.E.2d 487 (abstract opinion); see *State v. Siekermann* (Mo. S.Ct. 1963), 367 S.W.2d 643.

Defendant further contends that the conventions for the attempt murder of Justo Rivera and for the aggravated battery upon Angel Rivera emanated from the same act or series of acts, and that therefore the aggravated battery conviction should be reversed. In presenting this argument, defendant concedes that the trial court imposed only one sentence for his convictions of attempt murder and aggravated battery of Justo Rivera. He argues, however, that since he maintained a constant position throughout the attacks on both Justo and Angel, he could not receive a separate sentence for the aggravated battery upon Angel.

■■ A person cannot be convicted of two or more offenses resulting from the same conduct. (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(m).) Conduct is defined as "an act or series of acts, and the accompanying mental state." (Ill. Rev. Stat. 1969, ch. 38, par. 2—4.) It is clear that separate offenses may arise from a series of closely related acts, which crimes are clearly distinct and require different elements of proof. *People v. Johnson* (1970), 44 Ill.2d 463, 256 N.E.2d 343, *cert. denied* (1970), 400 U.S. 958.

■■ Defendant misses the point when he argues that he maintained a constant position during the course of the attacks. He was tried and convicted upon a theory of accountability, and therefore his actions must be analyzed in connection with the acts of Pace, the principal. The attack upon Angel Rivera commenced only after the youth came to the defense of his father. After Angel struck each defendant once with the baseball bat, Pace chased the youth, caught him about 15 feet away, and hit him three or four times with the baseball bat. He then returned to the father and beat him with the bat. Although the attacks were closely related in

time and space, they were clearly separate and distinct crimes. (*People v. Smith* (1972), 6 Ill.App.3d 259, 285 N.E.2d 460.) Defendant properly received separate punishments for the crimes against Justo and Angel Rivera.

Defendant's final contention is that the sentence rendered by the court upon his conviction for aggravated battery upon Angel Rivera was not justified by the verdict. Defendant was indicted and tried upon two counts of aggravated battery in relation to the attacks upon each victim. One of the counts (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(a)), is predicated upon the commission of a battery "caus[ing] great bodily harm," punishable by a sentence of one to ten years, while the other (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b)(1)), is premised upon the commission of a battery "us[ing] a deadly weapon," punishable by a sentence of 1 to 5 years. Although the jury was instructed upon each count, the verdict form tendered the jury did not distinguish between the two types of offenses. Thus, the verdicts returned by the jury simply stated that defendant was guilty of the crimes of aggravated battery upon Justo and Angel Rivera. The trial judge imposed only one sentence upon defendant for his acts against Justo Rivera, a sentence of 5 to 15 years for attempt murder. The court further sentenced defendant on the aggravated battery verdict relating to his attack on Angel Rivera to 5 to 10 years, both sentences to run concurrently.

The defendant argues that the second sentence rendered by the court was unsupported by the verdict returned by the jury, for although the sentence was obviously based upon a conviction under 12—4(a), there is nothing in the record to suggest upon which type of aggravated battery offense the jury's finding was based.

■■ We agree with defendant's contention. We also believe that the evidence presented supports a guilty verdict under either section of the statute. Accordingly, we will vacate the sentence imposed for the aggravated battery of Angel Rivera, and instead impose the statutory minimum sentence permitted under the section carrying the lesser sentence.

Defendant's sentence for the aggravated battery of Angel Rivera, therefore, is reduced to 1 to 5 years, the sentence to run concurrently with his sentence imposed for the attempt murder of Justo Rivera. And as so modified, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed as modified.

DEMPSEY and McGLOON, JJ., concur.