THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES C. ROYSE, Defendant-Appellant.

Fifth District No. 81-41

Opinion filed May 12, 1982.—Rehearing denied July 9, 1982.

KARNS, P. J., dissenting.

Louis B. Garippo, of Louis B. Garippo, Ltd., of Chicago, for appellant.

Randy Patchett, State's Attorney, of Marion (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

After a jury trial in the circuit court of Williamson County, defendant, James C. Royse, was found guilty of delivery of more than 30 grams of a substance containing cocaine and was sentenced to six years' imprisonment. In this appeal defendant contends that: (1) the information by which he was charged was fatally defective; (2) a new trial should have been granted due to the ineffective representation of his retained trial counsel; and (3) the minimum sentence imposed deprived him of due process of law.

Defendant was tried jointly with Kevin Young, who was tried in absentia under section 115—4.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 115—4.1). Defendant raised and argued a defense of entrapment, and the jury was instructed as to both accountability and entrapment.

The State's evidence consisted primarily of the testimony of sheriff's deputies Bruce Townsend and William Mehrtens, whose undercover operations resulted in the deputies' purchase of cocaine on January 10, 1980. at the house shared by defendant, Young, and Debbie Clinton. Townsend testified as to the following version of the events. He and Young planned the transaction in the kitchen of the house on January 9, 1980, while Mehrtens waited in the deputies' car. Townsend obtained a small sample of cocaine on January 9, then left and tested the sample before returning to the house the same day. On Townsend's return, he and Young further planned the transaction in the living room in the presence of defendant and Ms. Clinton. In defendant's presence, Young suggested having defendant go get the cocaine when Townsend returned with the money. The next day, when Townsend returned, he asked Young and defendant whether it was "snowing," that is, whether the cocaine had been obtained; both replied that it was snowing. Townsend insisted that the money be counted out in the car, where Mehrtens was waiting. Defendant went out and counted the money, then left in his own car. Upon defendant's return, both deputies and all three residents of the house met in the kitchen, where defendant produced the cocaine from a jacket pocket. Townsend further testified that he had been in the house on about six occasions between December 19, 1979, and January 9, 1980, and that on one occasion when Young was absent, he and defendant had discussed selling Townsend some LSD.

Deputy Mehrten's testimony regarding his own observations from the deputies' car on January 9 was corroborative of Townsend's account. He agreed with Townsend that on January 10 defendant came out to the car to count the money, then left in his own car, producing a packet of cocaine in the kitchen on his return. Mehrtens also testified that he was present in the house on December 11, 1979, when he purchased LSD from

Young, and on December 13, 1979, when he purchased LSD from defendant in Young's absence.

Defendant testified in his own behalf that he had lived in the house for less than two months at the time of the offense. Defendant admitted his presence in the house on January 9 and 10 at the times the deputies had testified he was there; however, defendant stated that he did not realize that a drug transaction was in progress until, on January 10, Young asked defendant to go out to the car and count the money. Defendant refused. According to defendant, Townsend asked defendant whether he was a "narc" and called him "chicken shit." Defendant related that Young told him to count the money or move out and that he (defendant), mindful that he owed Young money for rent and utilities, complied. Defendant testified that he told the deputies, however, that the deal was none of his business and that he did not want to get involved. Defendant further stated that he then returned to the house, where Young gave him the packet of cocaine and told him to drive around so that it would appear that the cocaine had not come from the house. Defendant further testified that when he returned, he threw the cocaine on Young's scale, said he had nothing to do with it, and left the room. Defendant admitted that he did sell Mehrtens LSD on December 13, 1979, and that he had known what it was; however, he testified that Mehrtens had told him the deal was already set up with Young and that Young would be angry if defendant blew it.

On cross-examination, defendant testified that he had not seen Ms. Clinton in three months and was unaware of her whereabouts. On re-cross-examination, he replied in the negative when asked whether he intended to call Ms. Clinton as a witness. The trial court informed the jury that Ms. Clinton had pleaded guilty to possession of less than 30 grams of cocaine but admonished the jury that this information was to be considered only to show why Ms. Clinton was not present at trial.

At the hearings on defendant's post-trial motion, defendant was represented by new counsel who argued that defendant's trial counsel had been so ineffective that defendant had been deprived of a fair trial. In denying the post-trial motion, the court commented that trial counsel had not handled the case as he would have. The court stated:

> "I have seen cases where counsel has done a worse job than the Defense counsel in this case. Not a lot, but I have seen some in major cases. The problem is, and [sic] if this were appointed counsel I would have no hesitancy in deciding that his conduct was so incompetent that this Defendant should have a new trial."

■■ First, we consider defendant's contention that the information was fatally defective because it alleged his unlawful delivery of "cocaine." Defendant notes that the legislature recently deleted one reference to

"cocaine" where it appeared in schedule II of the Illinois Controlled Substances Act (compare Ill. Rev. Stat. 1979, ch. 56½, par. 1206(b)(4), with Ill. Rev. Stat. 1975, ch. 56½, par. 1206(b)(4)), and argues that cocaine is therefore no longer a controlled substance. This contention was rejected in *People v. Simon* (1980), 91 Ill. App. 3d 667, 416 N.E.2d 285. We reject that contention for the additional reason that the instant defendant was charged with violation of section 401(a)(2) of the Controlled Substances Act, which specifically proscribes delivery of "30 grams or more of any substance containing cocaine." (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).) We also note that Schedule II still lists "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves * * *." (Ill. Rev. Stat. 1979, ch. 56½, par. 1206(b)(4).) Cocaine is a "derivative" of coca leaves. (*People v. McCarty* (1981), 86 Ill. 2d 247, 427 N.E.2d 147; Webster's Third New International Dictionary 434 (1971).) The legislature's deletion of "cocaine" appears to have been intended to cure a redundancy in the language of that provision rather than to decriminalize cocaine.

■■ Defendant also contends that the information was defective because it did not specify which form of cocaine defendant was charged with having delivered. This contention, too, was rejected in *Simon*. Further, we find neither evidence nor authority in support of defendant's view that certain forms of cocaine are not controlled by the Act. In *United States v. Orzechowski* (7th Cir. 1977), 547 F.2d 978, *cert. denied* (1977), 431 U.S. 906, 52 L. Ed. 2d 391, 97 S. Ct. 1701, cited by defendant, the parties agreed and the court assumed that some forms of cocaine were not controlled. In *United States v. Bockius* (5th Cir. 1977), 564 F.2d 1193, cited by defendant, the court assumed, without deciding, that "L-cocaine" was the only illegal form of eight existing forms of cocaine. There the court specifically reserved the question of the validity of that construction of the applicable statute. (564 F.2d 1193, 1194 n.1.) In the case at bar, the parties dispute whether some forms of cocaine are not proscribed. In the absence of evidence or authority to the contrary, we read the statute as it appears, *i.e.*, it is unlawful to deliver 30 grams or more of "cocaine." Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).

■■■ Defendant also argues that the Act is fatally ambiguous because it does not define "cocaine." When construing a statute the court is required to assign to the words used therein their plain and ordinary meaning. (*People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666.) "Cocaine" is defined as an alkaloid obtained from coca leaves and synthesized from ecgonine. (Webster's Third New International Dictionary 434 (1971).) We believe the Act's use of "cocaine" is sufficiently unambiguous in view of the general acceptance of this definition.

■■ Next, we consider defendant's contention that the incompetence of his trial counsel requires that the cause be remanded for a new trial.

Defendant argues that reversal is mandated in view of the trial court's comments indicating that trial counsel would have been found incompetent under the standard for appointed counsel. He urges that this court held in *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805, filed after the hearings on the post-trial motion in this case, that a less rigid standard for determining competency of retained counsel as opposed to appointed counsel was impermissible because of the decision in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708. In *Scott* this court determined that the standard for retained counsel should be the same as the standard applied to appointed counsel. Under the rationale of *People v. Scott*, defendant is entitled to a new trial if counsel " 'was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different.' " (*People v. Scott* (1981), 94 Ill. App. 3d 159, 163, 418 N.E.2d 805, 807; *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203, 211.) The State argues that, contrary to the comments of the trial court, counsel was sufficiently competent under the standard set forth in *Scott* and *Greer*. We are constrained to consider this argument because the judgment of a trial court must be sustained on any ground warranted in the record irrespective of whether the particular reasons given or specific findings of the trial court are correct. *People v. Hamilton* (1978), 56 Ill. App. 3d 196, 371 N.E.2d 1234, *aff'd* (1979), 74 Ill. 2d 457, 386 N.E.2d 53.

Defendant urges as showing counsel's incompetence: counsel's failure to move for a severance of trial from that of the absent Young; failure to argue at the preliminary hearing; failure to move for a directed verdict after the State's case; failure to move for a mistrial after Deputy Townsend volunteered that defendant had been involved in unspecified other offenses; failure to follow up an attempted impeachment by use of a prior inconsistent statement by reading the prior statement from an available transcript; failure to object to the prosecutor's inquiry, on cross-examination of defendant, as to whether defendant intended to call Debbie Clinton as a witness; failure to object to various leading questions and hearsay answers; failure to object to the deputies' "summarizing" conversations with Young and defendant without specifying who was present and identifying who made the statements testified to; failure to object to testimony that defendant "understood and was agreeable" with the plan of the transaction; and failure to object to Mehrten's summary of conversations which occurred outside Mehrtens' presence.

■■ Some of defendant's contentions in this regard are well taken, and others are not; however, defendant's assertions on appeal must be viewed in light of the fact that our supreme court has held that the failure to object may be deemed a mere tactical judgment designed to avoid em-

phasizing the objectionable matter. (*People v. Greer.*) As for counsel's failure to argue at the preliminary hearing or to move for a directed verdict, the record discloses no grounds for a successful motion, and defendant does not now suggest any argument counsel could then have advanced. We do not fault defense counsel for failing to seek a severance from the trial of co-defendant Young because Young's counsel did move for severance without success. Further, grounds for such a motion are not now urged and none appear.

The following colloquy between defendant's counsel and Deputy Townsend deserves special mention. Defendant argues that defense counsel's failure to move for a mistrial because of these comments by Townsend or at least ask that the jury be instructed to disregard them illustrates counsel's "fatalistic acceptance of defendant's guilt and careless or indifferent representation":

> "Q. But you talked to Kevin Young?
>
> A. Yes, sir. He was home.
>
> Q. And you asked him, I believe you said, about a large purchase of LSD?
>
> A. We had been talking about the purchase of LSD; LSD had been purchased there before.
>
> * * *
>
> Q. I believe you stated that when you came back and you were trying to make the details of the transaction, you stated that Kevin Young said that [defendant] would go get the stuff.
>
> A. Mr. Young—
>
> Q. [Defendant] didn't say that. Mr. Young said that, isn't that true?
>
> A. Mr. Young, [defendant] and myself were engaged in a conversation, in the house. When I asked how the transaction would go the next day, Mr. Young stated that [defendant] would go to obtain the cocaine. There was no doubt in my mind but what [defendant] knew fully what was going on.
>
> * * *
>
> Q. Isn't it true, Mr. Townsend, that until the 10th of January, [defendant] wasn't involved in this thing at all, other than being present in the house?
>
> A. By 'thing,' I don't understand what you're—
>
> Q. This whole negotiated sale of cocaine?
>
> A. I had been advised by other Agents he was involved in separate transactions, which we have not discussed."

■■ The above questions called for yes or no answers. The answers received were unresponsive hearsay. Townsend never testified that he par-

ticipated in or observed specific other transactions involving defendant or LSD. The witness' answers cannot be said not to be damaging to any prospects defendant had for acquittal. In our view defense counsel's failure to seek some ruling to alleviate the effects of this improper testimony supports the trial court's expressions of misgivings as to the competency of defense counsel at trial. In so concluding, we need not, and do not, conclude that counsel was in fact incompetent. In this regard, the comments of the trial court concerning counsel's competence are entitled to substantial deference by this court but are not conclusive.

■■ Under the standard now applied to retained counsel as well as appointed counsel, it is not sufficient cause for a new trial that counsel was actually incompetent as reflected in the performance of his duties as trial attorney; rather, to require a new trial, defendant must show that without such incompetence the result of the trial would probably have been different. (*People v. Scott; People v. Greer.*) In the case at bar, defendant argues that counsel's conduct deprived defendant of a fair consideration of his defenses of entrapment and lack of accountability. Defendant does not argue that a different theory of defense should have been pursued, nor does he suggest that other evidence more favorable to defendant was available and should have been brought forward. It has been held that a new trial is not warranted due to incompetence of counsel where the evidence of guilt was such that there could be little effective defense. *People v. Wesley* (1964), 30 Ill. 2d 131, 195 N.E.2d 708; see *People v. Neeley* (1980), 90 Ill. App. 3d 76, 412 N.E.2d 1010.

Regarding defendant's contention that his two defenses were ineffectively presented, we find the admissible evidence adduced insufficient to raise an issue of fact as to whether defendant was entrapped. It has been recognized that there can be no entrapment when an accused was already engaged in an existing course of similar criminal conduct for the reason that he is not an "otherwise innocent person." (*United States v. Jones* (7th Cir. 1962), 302 F.2d 46; *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522.) Defendant admitted selling LSD on one prior occasion. His testimony also indicated as well his familiarity with LSD traffic and the going price of LSD. Moreover, defendant's testimony concerning Townsend's attempts to get defendant to count the money, if believed, fell far short of undue encouragement or, for that matter, coercion.

Additionally, we believe no question of fact was presented as to defendant's guilt by accountability. Defendant admitted that he counted the money and participated in an artifice to create the impression that cocaine was not kept in the house and that he had the cocaine in his possession throughout that sham excursion. Therefore, defendant was at least guilty of aiding and abetting Young if he were not guilty as a prin-

cipal. We conclude that defendant has not shown that the outcome of the trial would probably have been different had his counsel been more competent. We find the opposite conclusion apparent on the record.

■■ We have also considered defendant's contention that the trial court erred in trying defendant jointly with Young. Defendant urges that the State failed to prove compliance with section 113—4(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 113—4(d)). Defendant has neither alleged nor shown how he was prejudiced as a result of any such error. It appears, rather, that any prejudice in this regard would have accrued to Young, who was portrayed in his absence as the protagonist in the offense. Further, defense counsel was faced with the fact that Young's motion for a severance had already been denied. Additionally, it cannot be disputed that defendant is in no position to question the propriety of a ruling which was made in response to a motion by, and which adversely affected only, his co-defendant. See *People v. Montgomery* (1974), 18 Ill. App. 3d 828, 310 N.E.2d 760.

■■ Next, defendant argues that the trial court erred in prohibiting defendant from informing the jury that the minimum penalty for the offense charged was six years' imprisonment. This order was not error. Where the jury has nothing to do with fixing the punishment, it is improper for either party to argue the punitive effect of the jury's verdict. *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665.

■■ Defendant next urges that the prosecutor was guilty of misconduct in asking defendant whether he was going to call Debbie Clinton as a witness. It is generally improper for the State to comment on defendant's failure to call a witness where the comment suggests that the witness would have testified unfavorably to defendant and witness is as accessible to the State as to defendant. (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339.) However, we do not perceive any possible prejudice to defendant in view of his own testimony which established his guilt. Additionally, we note that the deputies' testimony informed the jury that Ms. Clinton was present at the time of the offense and was involved to some extent. It is reasonable to conclude that the jury might have drawn a negative inference from defendant's failure to call Ms. Clinton as a witness, even absent the prosecutor's inquiry. (See *Olejniczak.*) We believe that the question was without practical effect. We reach the same conclusion with respect to defendant's contention that the trial court should not have informed the jury that Ms. Clinton pleaded guilty to possession of cocaine. In this regard we note as well that the nature of defendant's admitted involvement in the transaction was quite different from Ms. Clinton's, suggesting that the two were not similarly situated with respect to possible defenses. Regarding defendant's contention that

he should have been permitted to show Ms. Clinton's guilty plea negotiations, defendant has alleged no specific prejudice on appeal and none is suggested of record.

■■ The last issue raised by defendant in this appeal is that the mandatory minimum sentence for the offense of which he was convicted results in an unconstitutional denial of due process of law. Defendant relies primarily upon *People v. McCarty* (1981), 93 Ill. App. 3d 898, 418 N.E.2d 26, in which the court held that cocaine was not a narcotic. Subsequent to the filing of defendant's initial brief, our supreme court reviewed *People v. McCarty* on appeal and held that cocaine was properly classified with "true" narcotic substances for the purpose of penalty. (*People v. McCarty* (1981), 86 Ill. 2d 247, 257, 427 N.E.2d 147, 152.) It would needlessly prolong this opinion to recite the rationale of *McCarty* in which the supreme court upheld a similar penalty for delivery of less than 30 grams of cocaine. We believe that an equally strong argument exists in favor of the instant penalty which, while more severe than the penalty upheld in *McCarty*, is also contingent upon commission of a more serious offense. In our view *McCarty* is dispositive of this issue.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

HARRISON, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:

I agree with the trial court's assessment of counsel's representation of defendant at trial. Under our decision in *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805, performance of retained counsel is to be judged by the same standard as appointed counsel, a standard required, we felt, under the Supreme Court's decision in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708. It seems to me that the trial court was in a better position to assess counsel's performance. (*People v. Callaham* (1978), 60 Ill. App. 3d 1020, 1026, 377 N.E.2d 171, 177.) The majority opinion has detailed those shortcomings and they need not be repeated here.

I am also troubled by the manner in which this case was presented to the jury by the prosecution. It has been often stated that a defendant is not entitled to a perfect trial. He is, however, entitled to a fair trial conducted in accordance with the basic rules of criminal procedure, and the prosecution has a duty to present its case in accordance with these rules regardless of the performance of defense counsel and his failure to object to

the introduction of incompetent and highly prejudicial evidence. This is particularly true here where defendant was tried with Young, who was tried *in absentia*, quite possibly improperly, and where the evidence of Young's guilt was overwhelming.

I do not consider the evidence of defendant's guilt so overwhelming as to pass these matters off as harmless error. Debbie Clinton, who the jury was improperly told had pleaded guilty to a related charge after the prosecution had improperly asked defendant on cross-examination if he planned to call her as a witness, was allowed to plead guilty to a reduced charge of possession and sentenced to a 30 months' probation. Properly tried, defendant might well have been convicted of an offense which permitted probation as a possible penalty.

Here the prosecution introduced evidence in its case in chief which tended to show that defendant had committed several distinct and unrelated crimes. This evidence may have become competent in rebuttal as tending to prove defendant's propensity to commit the crime charged if defendant later interposed the defense of entrapment (*People v. Price* (1974), 17 Ill. App. 3d 911, 309 N.E.2d 56); however, defendant may not have done so. He may have defended solely on his lack of accountability for Young's conduct in arranging and selling the cocaine.

The record is replete with improper leading questions and the admission of improper hearsay evidence, which the prosecution witnesses recounted in narrative fashion. Several of these instances involved conversations between the prosecution witnesses and Young and Clinton when it was never established that defendant was present. The witnesses were asked questions which allowed them to give their impression as to defendant's guilt.

One other matter must be noted. I consider it highly improper for a trained police officer, assigned to a special narcotics enforcement group, to respond to a question requiring only a yes or no answer, that he was advised by other agents that defendant was involved in other narcotics transactions "which we have not discussed." Nothing defense counsel could have done could have removed the damaging effect of such improper testimony.