SECOND DIVISION
March 14, 2006

No. 1-04-1049

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| | ) | |
| SANTANA MCCREE, | ) | Honorable |
| | ) | Leo E. Holt, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE SOUTH delivered the opinion of the court:

Defendant Santana McCree appeals his convictions for first degree murder and concealment of a homicidal death in the stabbing death of Denise Williamson. Following a bench trial, the trial court sentenced defendant to consecutive prison terms of 40 years for murder and 5 years for concealment of a homicidal death. We affirm.[1]

Briefly stated, the evidence presented at trial established that on July 20, 2001, defendant stabbed Williamson once in the chest while they were smoking crack cocaine and heroin in the kitchen of the home he shared with his girlfriend, Ruth Goodson. Defendant's videotaped confession indicated he stabbed the victim because he thought she was trying to take his drugs. Goodson and her children were home during the incident; she heard a gasp from the kitchen and went downstairs to investigate. She saw a woman lying in a pool of blood in the middle of the

_____

[1]An extensive recitation of the facts leading to the stabbing incident in this case is unnecessary in order to resolve the issues raised on review. Relevant facts will be discussed as needed.

floor and defendant told her that he stabbed the victim because she owed the Gangster Disciples street gang money, and they were going to pay him $10,000 to kill her. Defendant and Goodson then wrapped the victim's body in a blanket, put it in a laundry bag, and loaded it into a stroller. They then left the stroller in a vacant lot and dropped the bloody knife into a sewer. Defendant subsequently cleaned the kitchen and disposed of his bloody clothes.

The next day, defendant took Goodson and her children to her mother's house, where she told her family about the murder, and they subsequently took her to the police station, where she alerted police as to what had occurred. The victim's body was recovered from the vacant lot, and police waited for defendant, and he was subsequently arrested at 11:45 p.m. on July 11, 2001, when his car was stopped at a traffic signal.

After his arrest, defendant was immediately taken to the police station, where he was questioned several times over the course of the night and the next day. After being advised that the police had located a witness named Yolanda Stone who had seen him and the victim together, and that Goodson was about to take a polygraph test, he gave a statement implicating himself in the murder. That statement was subsequently videotaped, and things revealed during the statement led police to the recovery of the knife and bloody rags.

Prior to trial, defendant filed a motion to quash his arrest and suppress the evidence and a separate motion to suppress the statements. The trial court held separate hearings on both motions. After denying the motion to quash the arrest and suppress evidence, a hearing was held on the motion to suppress the statements.

At the hearing on defendant's motion to suppress his statements, Chicago police officer

1-04-1049

Vernon Mitchell and Detective Roger Murphy testified that they observed the arrest of defendant. Neither saw defendant slammed to the ground, kicked or beaten at the scene of his arrest. Mitchell stated that defendant was handcuffed, taken into custody by one of the officers, placed in Murphy's squad car and taken to the station. Once they arrived at the station, defendant was taken to an interview room where his handcuffs were removed. Defendant was left alone in the interview room while Murphy went to defendant's home to investigate the crime scene.

Defendant's first interview occurred at 12:05 a.m. after Murphy returned to the station. Murphy gave defendant his *Miranda* rights, after which defendant agreed to talk. Murphy noticed what appeared to be bloodstains on defendant's shoes and asked defendant to remove the shoes. Defendant was given paper booties to wear while officers retrieved other shoes from his home for him to wear at the station. During this first 15-minute interview, defendant denied any involvement in the murder.

Detective Murphy again interviewed defendant at 2:15 a.m., this time for 30 minutes. In this interview, defendant stated Goodson's brothers killed the victim because she owed them money for drugs, and blood had gotten on his shoes when he tried to clean up the kitchen. Soon thereafter, defendant said his girlfriend killed the victim because she was offered $10,000.

Detective Murphy then called felony review, and Assistant State's Attorney (ASA) Jim Lynch came to the station. ASA Lynch interviewed defendant, first alone, then with Detective Murphy, for approximately 30 minutes after giving defendant *Miranda* rights and advising defendant that he, Lynch, was a prosecutor. Defendant repeated his story that Goodson killed

3

the victim and added that he strangled the victim when she did not die after Goodson stabbed her. Defendant was not handcuffed during this conversation and was fed following the interview. Before going off duty at 6 a.m., Murphy told the midnight watch commander to take defendant to the bathroom if he knocked on the door.

When Murphy returned to the station at 3 p.m., he met with Detective Graf and learned the victim had been identified through fingerprints. He was told that defendant had been fed. At 6:15 p.m., Murphy again met with defendant, this time for an hour, and again advised defendant of his *Miranda* rights. Defendant was alert, awake and not handcuffed at this time. Murphy told defendant that Yolanda Stone was being interviewed and that Goodson was on her way to take a polygraph test. Defendant then admitted that he killed the victim.

Detective Murphy again called felony review, and ASA Deidre Cato arrived at the station at approximately 8 p.m. ASA Cato met with Detectives Murphy and Riley, as well as Goodson and Stone, prior to meeting with defendant. Detective Murphy was present for ASA Cato's interview with defendant at 11:15 p.m., which lasted 45 minutes. ASA Cato advised defendant of his *Miranda* rights and told him she was a prosecutor. Defendant was not handcuffed during the interview and never refused to talk to her. ASA Cato saw that defendant was wearing shoes but could not remember their color. After defendant made admissions concerning the victim, ASA Cato advised defendant that he could have his statement memorialized in writing, in a court-reported statement, or on video. Defendant chose to have his statement videotaped. During the course of the evening, defendant was fed, went with the detectives to the crime scene, and showed them the location of the knife and his bloody clothes.

4

At 2:15 a.m., ASA Cato and Murphy returned to the interview room and met with defendant for another 30 minutes. After this meeting, ASA Cato returned alone and spoke with defendant for approximately 5 to 10 minutes, asking him how he had been treated. Defendant, who did not appear to be in pain, stated he had been fed. She did not ask him whether or not he had been beaten or threatened with respect to his children. Defendant, ASA Cato and Murphy then went to the video room, where defendant signed the consent-to-video form. After defendant was again advised of his *Miranda* rights, he gave a videotaped statement.

In the videotaped statement, defendant stated that after obtaining Goodson's permission, he invited the victim into the house to share cocaine. He smoked three rocks of cocaine and became paranoid that the woman was going to steal some of his cocaine. He yelled for Goodson, who was upstairs, and when she came down, defendant took a knife and stabbed the victim once in the chest. The woman gasped and began to get up, so defendant tackled her and held her neck, while Goodson held her legs. After five minutes the woman stopped moving, and at Goodson's request, defendant put her body in a blue laundry bag and a baby carriage, which he and Goodson walked to a lot where they left it. Goodson dropped the knife into a sewer and disposed of the victim's bag, and they returned home.

Scott Kinzie testified that he processed defendant's intake at Cook County jail on July 14, 2001. Although he had no individual memory of processing defendant, the intake form, which was attached to a photo of defendant, indicated that he, with his shirt off, had no visible injuries and never complained of injuries.

Defendant testified at the hearing that around 11:45 p.m. on July 11, 2001, he was

stopped at a red light near his home. Suddenly, cars came from everywhere to block him, and police officers yelled at him to get out of the car. His car door "flew" open and officers grabbed him and threw him to the ground. He was handcuffed and kicked in the ribs and transported to the police station, where he was placed in an interview room without a clock or windows. While in this room he was handcuffed to the wall, and the handcuffs were not removed until just prior to the videotaped statement. Defendant also testified he was never given his *Miranda* rights before he agreed to talk to the officers or at any time prior to the beginning of the videotaped statements. He also stated his shoes were removed shortly after he got to the station and were not replaced until just before the statement was recorded. Defendant further stated that the officers threatened to take his children and suggested that he implicate Goodson in the murder.

After argument, the court found that because defendant was detained for less than 48 hours, it was his burden to demonstrate that the detention was unreasonable. The court denied the motion to suppress the statement afer concluding that it was a product of defendant's free will.

The cause then proceeded to a bench trial. The evidence presented at trial was substantially similar to the evidence adduced at the hearing on the motion to suppress. Defendant was subsequently convicted of first degree murder and concealment of a homicidal death and sentenced to consecutive prison terms of 40 years and 5 years, respectively.

Defendant has raised two issues for our review: (1) whether the trial court erred in denying his motion to suppress his statements as involuntary, and (2) whether his trial counsel was ineffective for failing to object to the admission of both defendant's oral and videotaped

6

1-04-1049

statements when they were consistent.[2]

Defendant first contends that the trial court erred in denying his motion to suppress his statements as involuntary because he was confined for an excessive period of time, he was handcuffed to the wall without being brought before a magistrate and subjected to mental and psychological coercion in violation of the United States and Illinois Constitutions.

It is a fundamental principle of criminal procedure that a confession must be voluntary or else it is inadmissible. People v. Melock, 149 Ill. 2d 423, 447 (1992); People v. Harbach, 298 Ill. App. 3d 111, 116 (1998). Whether a statement was made voluntarily is judged by the totality of the circumstances. People v. Williams, 181 Ill. 2d 297, 309 (1998); Harbach, 298 Ill. App. 3d at 116.

The test for voluntariness is not whether the accused wanted to confess or would have confessed in the absence of interrogation. People v. Gilliam, 172 Ill. 2d 484, 500 (1996). "Criminals typically do not confess to the police purely of their own accord, without any questioning." People v. Terrell, 132 Ill. 2d 178, 198 (1989). Rather, the test for voluntariness is "whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she confessed." Gilliam, 172 Ill. 2d at 500, citing People v. Clark, 114 Ill. 2d 450, 457 (1986), citing

---

[2] Defendant withdrew his third issue based on the disposition of a recent supreme court decision, People v. Phillips, 217 Ill. 2d 270 (2005), in which the court decided against defendant's position.

7

1-04-1049

People v. Prim, 53 Ill. 2d 62, 70 (1972).

Factors to consider when determining voluntariness include: the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises. Gilliam, 172 Ill. 2d at 500-01, citing Melock, 149 Ill. 2d at 447-48.

The State has the burden of establishing the voluntariness of the defendant's confession by a preponderance of the evidence. Gilliam, 172 Ill. 2d at 501. When reviewing whether defendant's statement was voluntary, we accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. People v. R.D., 155 Ill. 2d 122, 145 (1993); People v. Griffin, 327 Ill. App. 3d 538, 544 (2002).

Here, the evidence presented at the hearing established that police waited for and arrested defendant after his girlfriend went to the police and gave them information relative to the murder. The victim's body was subsequently recovered based on information provided by Goodson, and she gave a statement about the murder. Therefore, we find the police had probable cause to arrest defendant.

After his arrest, defendant was immediately taken to the police station and placed in an interview room. His shoes, which had blood residue on them, were removed, and they were replaced shortly thereafter with another pair of shoes taken from defendant's home. The trial court noted that the most troublesome part of the case was the length of time defendant was held

8

in custody prior to giving the statement, which was approximately 27 hours, but determined that it was not necessarily dispositive.

The court found there was no physical corroboration of defendant's allegation that he was beaten by police, nor did defendant complain to anyone that he was hurt. The court concluded that although it believed 27 hours was lengthy, there were no cases which held that 27 hours was too long, as opposed to the United States Supreme Court cases that specifically indicated that 48 hours was too long. See County of Riverside v. MacLaughlin, 500 U.S. 44, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991). Moreover, our supreme court, in the recent case of People v. Willis, 215 Ill. 2d 517, 533 (2005), held that delay alone is not sufficient to vitiate a confession but is merely a factor to be considered on the question of voluntariness. The court also found there was no other evidence suggesting the statement was involuntary - it rejected defendant's contention that he had been beaten and rejected defendant's contention that he was told that if he confessed he would be fed. The court noted that when investigating a crime, and in this case a murder, the police have a right to be "as aggressive in seeking to resolve it as the Constitution will allow them to be."

Based upon this evidence, we find the trial court's factual findings were not against the manifest weight of the evidence. Defendant was 27 years old at the time of the statement; he had numerous prior contacts with the police and convictions; as noted above, the detention was legal; the questioning was in intervals of 15 to 30 minutes; only once did the questioning go for one hour; and there was no proof of any physical abuse or threats. Therefore, the motion to suppress was properly denied.

Next, defendant contends his trial counsel rendered ineffective assistance of counsel by failing to object to the admission of his oral and videotaped statements.

In Illinois, ineffective assistance of counsel is established when a defendant shows (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that, but for counsel's shortcomings, a reasonable probability exists that the result of the proceedings would have been different. People v. Martinez, 348 Ill. App. 3d 521, 536 (2004).

Defendant maintains the admission of his videotaped statement was improper because it was consistent with his oral statement, thus making one of the statements a mere corroboration of the other and improperly bolstering the credibility of his prior inculpatory statement, and that his counsel was ineffective for failing to object.

Defendant cites People v. Smith, 139 Ill. App. 3d 21 (1985), and People v. Terry, 312 Ill. App. 3d 984 (2000), in support of his argument that one of his consistent statements was improperly admitted; however, we find these cases distinguishable because they involve instances where prior consistent statements of a State witness were used at trial. Those cases do not address the circumstances presented here, namely, that defendant's own statements were admitted as substantive evidence at trial. Defendant's argument misinterprets the use of a defendant's prior consistent statements as substantive evidence at trial and the evidentiary rules surrounding their admission.

Out-of-court statements are hearsay and are generally not admissible at trial. People v. Parrott, 40 Ill. App. 3d 328, 331 (1976). However, a defendant's out-of-court statements qualify as a party admission and, therefore, are an exception to the hearsay rule. People v. Ramsey, 205

10

1-04-1049

Ill. 2d 287, 294 (2002), citing People v. Kidd, 175 Ill. 2d 1, 29 (1996); People v. Montgomery, 18 Ill. App. 3d 828, 832 (1974). The party-admission exception applies when the statement is sought to be introduced by a party opponent, since the admissibility is based upon the adversary theory of litigation. Montgomery, 18 Ill. App. 3d at 832.

Here, the State, through Detective Murphy's testimony, elicited the contents of defendant's oral statements and subsequently admitted defendant's videotaped confession into evidence. Detective Murphy's testimony summarized defendant's many statements over the course of the interviews, including that he killed the victim for money and that he killed her because he thought she was trying to take his drugs. In the videotaped confession, defendant stated that he killed the victim because he thought she was trying to take his drugs. At trial, defendant stated he killed the victim in self-defense. Therefore, defendant's statements were properly admitted as a party admission and served to impeach his trial testimony. Although the statements were cumulative, we find defendant was not prejudiced by their admission because he does not deny the contents of the statements, and the evidence of his guilt was overwhelming.

Accordingly, we conclude defendant's trial counsel was not ineffective for failing to object to defendant's multiple statements at trial.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GARCIA, P.J., and WOLFSON, J., concur.

11